## PRESSLEY *v.* MOBILE & G. R. Co.

*(Circuit Court, M. D. Alabama.* May Term, 1882.)

1. **PRINCIPAL AND AGENT—LIABILITY FOR MALICIOUS ACTS OF AGENT.**

    An agent acting under an authority to control and supervise the lands of a corporation cannot institute against parties a criminal prosecution for larceny or other offense against the criminal laws, committed in reference to the property in his custody as agent, and so bind his principal in damages for a malicious prosecution, though it be shown that the prosecution was without probable cause and was malicious.

2. **SAME—LIABILITY, WHERE ATTACHES.**

    If an agent, while acting within the range of his employment, do an act injurious to another, either through negligence, wantonness, or intention, then for such abuse of the authority conferred upon him or implied in his appointment the master or employer is responsible in damages to the person thus injured;

but if the agent go beyond the range of his employment or duties, and of his own will do an unlawful act injurious to another, the agent is liable, but the master or employer is not.

3. RAILROAD COMPANIES—UNLAWFUL ACTS OF LAND AGENTS—LIABILITY.

An agent of a railroad company, having and exercising supervision over the lands of the company and in charge of such lands, making leases, collecting rents and stumpage, and negotiating sales of the lands for the company, who invokes the criminal law by bringing a charge of grand larceny against a party for spoliation of the timber lands of the company, is not in so doing acting within the scope of his agency or in the course of his employment, and the company is therefore not to be held responsible for such actions done maliciously by him.

Heard upon Motion for New Trial.

*D. S. Troy* and *H. C. Tompkins,* for plaintiff.

*David Clopton* and *J. T. Norman,* for defendant.

BRUCE, J. This is an action for damages for a malicious prosecution, instituted by the plaintiff against the defendant, a corporation organized under the laws of Alabama and doing business in the state of Alabama. The declaration alleges that the defendant, on the twenty-fifth day of March, 1881, at Pollard, in the county of Escambia, in the state of Alabama, the circuit court for said county being then and there in session, * * * by its duly-authorized agent, W. J. Van Kirk, upon oath wrongfully, falsely, and maliciously, and without any reasonable or probable cause, * * * charged the plaintiff with having committed the crime of grand larceny; * * * that the defendant caused and induced the grand jury to find a bill of indictment against him; and that upon a writ issued he was arrested and held for trial upon the indictment, and afterwards, upon a plea of not guilty, he was tried in said court and acquitted, and the prosecution ended. To this declaration the defendant corporation plead not guilty.

The verdict of the jury was for plaintiff, and the main question made upon the motion for a new trial is, whether the defendant railroad company can be held responsible in damages for what Van Kirk did in the institution of the prosecution against the plaintiff, even if he was the agent of the defendant in the collection of rents, stumpages, and to sell and take charge of the lands of the company, and acted in the matter without probable cause.

It is not claimed that the agent, Van Kirk, had from the defendant railroad company any express authority to do what he did do in the matter of the institution of the prosecution of the plaintiff, nor is it claimed that there was on the part of the corporation, by any of its officers or agents, any subsequent ratification, approval, or sanction

of what Van Kirk had done in the matter of the prosecution; and the proposition of the defendant railroad company is that it cannot be held for the malicious acts of its agent, Van Kirk, upon any implied authority to do what he did in the matter of the prosecution of plaintiff, and that it can only be held responsible upon proof showing express authority or subsequent ratification of his (the agent's) acts.

Van Kirk's employment was that of a land agent for the company, and he had and exercised supervision over the lands of the railroad company in Escambia and other counties in Alabama. He was in charge of their lands; made leases, collected rents, stumpage, and even negotiated sales of lands for the railroad company.

The question then is, can an agent, acting under such an authority, institute against parties a criminal prosecution for larceny or other offense against the criminal laws, committed in reference to the property in his custody as agent, and so bind his principal in damages for a malicious prosecution, if it shall be shown that the prosecution was without probable cause and malicious?

It is settled law that corporations are liable for torts committed by their agents in the discharge of the business of their employment, and within the proper range of such employment. *Philadelphia, W. & B. R. Co.* v. *Quigley,* 21 How. 202; *Merchants' Bank* v. *State Bank,* 10 Wall. 645; Redf. Railw. § 130, and authorities there cited.

It was formerly held that a railroad company could not be held for the willful act of its employe, unless the act was previously ordered or subsequently ratified by the corporation. That rule has been modified, and in the recent case of *Gilliam* v. *S. & N. A. R. Co.,* in manuscript, the supreme court of Alabama, after saying that the rule has never been fully satisfactory, say:

"The precise modification is that if the agent, while acting within the range of his employment, do an act injurious to another, either through negligence, wantonness, or intention, then for such abuse of the authority conferred upon him, or implied in his appointment, the master or employer is responsible in damages to the person thus injured; but if the agent go beyond the range of his employment or duties, and of his own will do an unlawful act injurious to another, the agent is liable, but the master or employer is not."

To this proposition many authorities are cited. The court proceeds:

"The older cases follow the doctrine declared in *McMannus* v. *Crocket,* 1 East, 106, and relieve the master or employer from liability for tortious acts of the agent if intentionally done, although within the range of his duties, unless the tortious act was commanded or adopted by the master. In *Railroad*

*Co.* v. *Webb,* 49 Ala. 240, this court held that a railroad company cannot be sued in trespass for the willful tort of its employe unless the act was previously ordered or subsequently ratified by the corporation. We think the principle there announced should be so far modified as to limit its application to tortious acts of the agent done outside of his employment; to this extent we adopt the modified rule as applicable to railroads and their employes."

The question, then, is, not whether the agent, Van Kirk, had been ordered by the railroad company to do the act complained of, or whether the act had been subsequently ratified by the corporation; nor is the question what was the agent's motive in what he did— whether to serve his principal or to carry out a purpose of his own; but the question is, and the test of the matter is, *was the act complained of done by agent Van Kirk in the course of his employment, and within the range of his duties* as agent of the defendant railroad company?

Tested, then, by this rule, can it be maintained that Van Kirk, in the institution of the prosecution complained of, was acting within the range of his duties as agent, and in the course of his employment as such agent? He was in charge of the lands of the company, and it may be said that in every agency there is incidental or implied power and authority to the agent from his principal to employ all the necessary and usual means to execute the principal authority with effect.

Authorities are cited to this general proposition, and they show that this rule is carried, not only to the extent that an agent is authorized to employ the usual means to effect the object of his employment, but it goes so far as to authorize an agent to employ extraordinary means and remedies provided by law; as, for instance, when an agent is authorized to collect a debt he may not only bring suit, but may resort to attachment process, or to a replevin or detinue suit, and has authority to bind his principal in a bond required by law in order to obtain such remedy.

Cases are also cited to the proposition that an agent authorized to collect a debt, may, when the law allows it, arrest and imprison the debtor, upon the principle that it is one of the means of the recovery of the debt.

Imprisonment for debt, however, is inhibited by article 1, § 22, of the state of Alabama; and conceding that Van Kirk, in order to carry out the objects and purposes of his appointment, might employ all the usual and even the extraordinary means and remedies provided by law, still the question remains, could he for such a purpose resort

to a criminal prosecution, and so bind his principal for damages, if the prosecution was malicious?

It is claimed that, by section 4362 of the Revised Code of Alabama, a criminal prosecution for larceny is a means for the recovery of a debt, because by its terms the owner of the property stolen may recover the value of his property. That section provides in cases of conviction for larceny, and when the property has not been returned, "* * * the assessed value shall be made an item in the costs of the case, and whenever the costs in such cases, including the value of the property stolen, are paid or worked out at hard labor, the court of county commissioners must, upon a proper showing, allow and draw a warrant on the county treasury in favor of the owner of such property, for the value thereof, to be paid out of the fund arising from the proceeds of such labor."

In view of the constitutional provision to which we have referred, it can hardly be maintained that it was the object of this statute to furnish a remedy to a party whose property had been stolen, and thus give sanction to the idea that a criminal prosecution may be resorted to as a means for the recovery of a debt. It is more consistent to say that this provision of the law was not intended for the benefit of the person whose property had been stolen, but that it was to lend additional sanction to the law, and thus more effectually deter persons from the commission of this class of crime.

When crime is committed against person or property, it is a menace to the public welfare, and the law is invoked to protect society and vindicate public justice. Grand juries are not organized to make inquest and indict persons in order that some one whose property has been wrongfully taken may have restitution, but courts and juries are charged with the administration of the law for the public good.

An argument is made that there is no more effectual way by which this property of the railroad company (its timber lands) could be protected than by invoking the criminal law against depredators upon it, and the prosecutions in the United States courts are referred to, showing the purpose and efficiency of this remedy in protecting the public lands from spoliation. Grant all that can be said upon that subject, and it does not show that an appeal to the criminal law of the land by the individual citizen is a proper means to obtain redress for a private wrong. When an offense is committed against the law, as to the person or property of the individual citizen, he properly makes complaint and institutes a prosecution against the

wrong-doer; but he does so in vindication of the law which has been violated on his person or property, and not to secure a remedy to himself for his private wrong.

In the case at bar, if the property of the corporation defendant in charge of agent Van Kirk was depredated upon, and the criminal law violated in regard to it, it might have been the agent's duty to complain to the officers of public justice, and even to take proper steps to have the matter presented to a grand jury; but in doing so could he act otherwise than as a citizen—that is, in the absence of express authority from his company so to do?

The question is, can such action on his part be held to be within the scope of his agency and in the course of his employment? There may be, and the books recognize some difficulty in determining what acts of an agent or employe are properly within the range and course of his employment; but to say that to put the criminal law in operation against a party on a charge of larceny of the property of the corporation is within the scope of his agency, and in the course of his employment, is a proposition which, in the light of the decided cases, cannot be maintained. There are cases to the contrary. *Carter* v. *Howe Sewing-machine Co.* 51 Md. 290, and authorities there cited.

This conclusion seems to be strengthened from another view of the subject. Corporations can only act by means of agents and employes, and the decided cases upon the question of the liability of corporations for the acts of their agents and employes are mainly cases in reference to railroad corporations where the employes were employed in the operation of rolling stock upon the road in the transportation of freight and passengers. In these cases, employes such as conductors, engineers, and others are put in their positions by the corporations, and are charged with the management and control of agencies and instruments put into their hands by, and to be used by them in behalf of, the corporation in its business, and while so employed the railroad company must be held to assent to their acts, for they are the *corporation* itself *in action,* and it is bound for their acts, whether done negligently, unskillfully, or willfully.

In the case at bar the employment of Van Kirk as agent was not an employment of this character; his agency was not connected with the operation of the railroad, and he was not charged with the property of the railroad company used in the operation of the railroad. His agency had reference to other property altogether, and his action in regard to it cannot be held to be the action of the corporation in the same sense and to the same extent as if he had been an engineer

or a conductor employed and charged with the management and control of the means and agencies by and with which the corporation carried on its business.

The conclusion is that when Van Kirk invoked the criminal law as he did he was not acting within the scope of his agency, or in the course of his employment, and the company cannot be held responsible for his action, and that, therefore, the motion for a new trial must prevail; and it is so ordered.