KENT et al. v. OGDEN, L. & I. RY. CO.

No. 3036. Decided September 10, 1917. (167 Pac. 666.)

1. CARRIERS—INJURIES TO PROSPECTIVE PASSENGER—WEIGHT OF EVIDENCE. While evidence respecting the surroundings at a crossing and that there was no light provided, or conveniences for passengers, is important, where there is a conflict in the evidence respecting the cause of an accident to a person waiting for a train at the crossing, or with regard to the conduct of the injured person, or where there are no eyewitnesses, where eyewitnesses saw just how the accident occurred and saw deceased just before and at the very moment the collision took place, their evidence was necessarily controlling. (Page 335.)

2. EVIDENCE—CONCLUSIVENESS ON PARTY INTRODUCING. Where the testimony of witnesses introduced by plaintiffs was uncontradicted, plaintiffs were bound thereby. (Page 335.)

3. CARRIERS—INJURIES TO PROSPECTIVE PASSENGER—PROXIMATE CAUSE. Where a person waiting for a train at a crossing stop crossed the track as the train was approaching, but remained so close thereto that she was struck by the train, the position carelessly assumed by her was the cause of her injury, and not any negligence of the company respecting the speed of the train or the dazzling brilliance of the headlight.[1] (Page 337.)

4. CARRIERS—INJURIES TO PROSPECTIVE PASSENGER—CONTRIBUTORY NEGLIGENCE—QUESTIONS FOR JURY. Where a person waiting for a train at a crossing stood so near the track as to be struck by the train, and while it was claimed that the headlight was brilliant and dazzling, it appeared that the rails of the whole track were visible

---

[1] *Wilkinson* v. *Railroad*, 35 Utah, 110, 99 Pac. 466; *Pratt* v. *Light & Ry. Co.*, 38 Utah, 500, 113 Pac. 1032; *Bates* v. *Railroad*, 38 Utah, 568, 114 Pac. 527; *Steggell* v. *Salt Lake & Utah R. Co.*, 50 Utah, —, 167 Pac. 237.

to persons on the train from a point 700 or 800 feet from the cross-
ing, and up to the instant deceased was struck, the court should not
have submitted the question of contributory negligence to. the jury,
but should have granted a nonsuit or a directed verdict.[1]  (Page 339.)

5.  NEGLIGENCE—VARIANCE—CONTRIBUTORY NEGLIGENCE. While the
    plaintiff in a negligence case must recover, if at all, on one or more
    of the acts of negligence set forth in the complaint, yet in deter-
    mining the question of contributory negligence the jury are not
    limited to the acts of negligence described in the complaint, but may
    consider any fact, inference, or circumstance disclosed by the evidence
    upon that subject.  (Page 341.)

6.  TRIAL—INSTRUCTIONS—SINGLING OUT EVIDENCE OR FACTS. In
    charging on contributory negligence the court should not undertake
    to name the specific things or acts which the jury may consider, but
    should merely tell the jury to consider the evidence upon that subject
    and determine the question from a consideration of the whole evi-
    dence.  (Page 341.)

Appeal from District Court, First District; *Hon. J. D.
Call*, Judge.

Action by Joseph B. Kent and others against the Ogden,
Logan & Idaho Railway Company.

Judgment for plaintiffs.  Defendant appeals.

REVERSED and REMANDED, with directions.

*Boyd, DeVine & Eccles* for appellant.

*C. C. Richards* and *A. A. Law* for respondents.

APPELLANT'S POINTS

The pleader must allege in his complaint the acts or omis-
sions of .the defendant upon which he bases his right to
recovery, and show that they occurred through or by the
negligence of the defendant.  It is not sufficient that the acts
alone be stated, or that a general statement of negligence be
alleged.  The facts must be alleged, and it must be alleged
that these facts constitute negligence.  (Sutherland, Code
pleading, Practice, and Forms, Section 233; *Rosenarn* v.

---

[1]*Newton* v. *Railroad Co.*, 43 Utah, 219, 134 Pac. 567; *Gibson* v. *Utah,
L. & T. Co.*, 46 Utah, 562, 151 Pac. 76; *Odwald* v. *Railroad,* 39 Utah, 245,
117 Pac. 46.

*Washington G. M. Co.,* [Cal.] 23 Pac. 1035; *Woodward* v.
*O. Ry. & Nav. Co.,* [Ore.] 22 Pac. 1076; *McPherson* v. *Pac.*
*Bridge Co.,* [Ore.] 26 Pac. 560; *Smith* v. *Buttner,* [Cal.] 27
Pac. 29.)

No statutory or municipal regulation governing the rate
of speed at Anderson crossing, was shown by the plaintiff,
and in the absence of such regulations we understand the law
to be that the company had the right to use its discretion in
establishing the speed of its trains. 33 Cyc. 971 and note 50,
citing, *Reed* v. *Queen Anne's R. R. Co.* 57 Atl. 529 [Del.];
*Partlow* v. *Ill. Central R. R. Co.* 37 N. E. 663 [Ill.]; *Toledo,*
*etc., R. R. Co.* v. *Smart,* 116 Ill. App. 523; *Boyd* v. *Chicago,*
*etc., R. R. Co.,* 103 Ill. App. 199; *Landon* v. *Chicago, etc.,*
*R. R. Co.,* 92 Ill. App. 216; *Slater* v. *Utica R. R. Co.,* 88 N. Y.
42.)   And when it is shown by the complaint or by the
evidence of the plaintiffs that the proximate cause of the
injury was due to the negligence of the injured person, there
is nothing for the jury, and the court will, as a matter of
law, adjudge the case in favor of the defendant. (*Pool* v.
*S. P. Co.,* 20 Utah 210, 58 Pac. 326; *Clark* v. *O. S. L. R. R. Co.,*
20 Utah 401, 59 Pac. 92; *Pens* v. *Mining Co.,* 27 Utah 378, 75
Pac. 934; *Holland* v. *O. S. L.,* 26 Utah 208, 72 Pac. 940.)

It is the duty of an intending passenger at a crossing to
take a position outside of the reach of the approaching car,
and if he fails to do so, and is in a position of danger, never-
theless, the motorman has a right to assume that he will get
out of the way, since it is common knowledge that a train
or car usually passes one who has signaled it to stop so that
he may enter at the rear. (*Wood* v. *Ry. C.* [Neb.] 120 N. W.
1121; *Neal* v. *Springfield, etc.,* [Mass.] 75 N. E. 702; *Griffiths*
v. *Denver Co.* [Colo.] 61 Pac. 46; *Luitz* v. *Denver Co.*
[Colo.] 95 Pac. 600; *Denton* v. *Ry. Co.* [Wash.] 88 Pac. 755;
*Wright* v. *The Company* [Va.] 66 S. E. 848.)

RESPONDENT'S POINTS

By erecting the station board and marking it ''Anderson''
the defendant made the stopping point its station, or premises,
for the purpose of receiving and putting off passengers. But
whether it did or did not the defendant was under legal

obligation to be on the lookout for the people it invited to go there to board its trains and to use reasonable and ordinary care to avoid injuring them while they were there. In the case of *Smalley* v. *Railroad Co.*, 34 Utah 448, this court said:

"It is but applying the general rule that, when one induces or invites another upon his premises, he must use ordinary care to avoid injuring him."

And in the case of *Brown* v. *Salt Lake City*, 33 Utah, 238, it was said:

"As against the mere intruders or licensees, the owner need not maintain his premises in a reasonably safe condition; but as to those who come upon them by invitation, express or implied, he owes the duty of reasonable care for their safety."

In declaring the law relative to negligence and contributory negligence, the Supreme Court of the United States in deciding the case of *Railway Company* v. *Ives*, 144 U. S. 428; 36 L. ed. 493, said:

"As the question of negligence on the part of the defendant was one of fact for the jury to determine, under all the circumstances of the case, and under proper instructions from the court, so also, the question of whether there was negligence in the deceased, which was the proximate cause of the injury, was likewise a question of fact for the jury to determine, under like rules. The determination of what was such contributory negligence on the part of the deceased as would defeat the action, or perhaps more accurately speaking, the question of whether the deceased, at the time of the fatal accident, was, under all the circumstances of the case, in the exercise of such due care and diligence as would be expected of a reasonably prudent and careful person, under similar circumstances, was no more a question of law for the court than was the question of negligence on the part of the defendant. There is no more of an absolute standard of ordinary care and diligence in the one instance than in the other."

The Ives case has been cited, and the doctrine announced by it expressly approved and followed in a great many cases decided by this court, among which are the following: (*Pool* v.

*Sou. Pac. Company,* 7 Utah 309; *Olsen* v. *Railway Company,* 9 Utah 129; *Smith* v. *Railway Company,* 9 Utah 141; *Woods* v. *Sou. Pac. Company,* 9 Utah 146; *Wines* v. *Railway Company,* 9 Utah, 232; *Jeffs* v. *Railway Company,* 9 Utah 374; *Riley* v. *Transit Company,* 10 Utah 428; *Dedricks* v. *Railway Company,* 13 Utah 41; *Lowe* v. *Salt Lake City,* 13 Utah 91; *Saunders* v. *Sou. Pac. Company,* 13 Utah 275; *Reese* v. *Mining Company,* 15 Utah 460; *Olson* v. *Railroad Company,* 24 Utah 472; *Jensen* v. *Railroad Company,* 44 Utah 116.)

In addition to the duty of the defendant to be on the lookout for intending passengers at the station board, the defendant's motorman was chargeable with knowledge that he was approaching a public highway crossing that was traveled by a large number of persons and teams, daily, and at all hours of the day. That there were no gates or gateman at the crossing and that travelers, either on foot or in vehicles, might be expected there at any time. Under such conditions it was his duty to keep a vigilant lookout for persons and vehicles as he approached the crossing and to so control his train, if necessary, as to avoid injuring any who might be there. (*Olson* v. *Railroad Co.,* 24 Utah 468-469; *Christensen* v. *Railroad Co.,* 29 Utah 204-205; *Young* v. *Clark,* 16 Utah 42; *Olson* v. *Railroad* Co., 9 Utah 136-139.)

FRICK, C. J.

The plaintiffs recovered judgment against the defendant for damages for the death of one Mary Eveline Kent, wife of the plaintiff Joseph B. Kent and mother of the other plaintiffs named in the caption. The defendant appeals from the judgment. The principal errors assigned are, that the evidence fails to show negligence on the part of the defendant, and that the evidence conclusively shows that the deceased was guilty of contributory negligence as a matter of law, and that therefore the court erred in refusing to sustain defendant's motion for a nonsuit and also in refusing to direct a verdict for the defendant.

In the complaint it is in substance alleged that on the 27th day of October, 1915, about seven o'clock P. M., the deceased,

while walking on a public highway waiting for a train on
which she intended to proceed to her home in Logan, Utah,
about five miles north from said crossing, was struck and
killed by a train of cars operated on the defendant's inter-
urban railway; that while the trains of the defendant stopped
to take on and let off passengers at said railway crossing,
called Anderson, yet the defendant had failed to provide any
lights or other conveniences for the deceased in waiting for
said train or in boarding the same; that the north-bound
train was then past due, and while the deceased was waiting
for said train "near said track in the darkness of the night,
and supposing that she was a sufficient distance therefrom
to avoid the possibility of colliding with the moving train,"
the defendant operated a train on its railway track afore-
said with a brilliant electric headlight, which dazzled and
confused the deceased; that in approaching said crossing said
train was operated at an excessive, dangerous, and negligent
rate of speed, to wit, about 40 miles per hour; that "before
the deceased could discover the peril she was in and remove
herself therefrom, said train ran against, struck, and
collided with said deceased," and she was instantly killed.
It is also alleged that the train did not stop at the crossing,
but ran by it at the speed aforesaid. The defendant denied
all acts of negligence and pleaded that the collision was caused
by the negligence of the deceased. The evidence is not very
voluminous, and is without conflict. Indeed, the defendant
introduced no evidence and relied entirely upon the evidence
produced by the plaintiff. The following plat will assist the
reader to understand the points hereinafter decided:

The two curved parallel lines marked "R. R." on the plat indicate the railway track. The space marked "H. W." indicates the public highway which crosses the railway at a point commonly known as Anderson's crossing. The lines marked "B" indicate an overhead bridge across the railway track which is about 800 feet south from the highway crossing. The point marked "A" on the plat on the highway east of the railway track indicates where the deceased was first seen by two witnesses who were on the train and who were leaning out of the west car window as the train passed the point marked "B" on the plat. The point marked "X" on the highway indicates the place where the deceased was standing when she was struck by the front end of the train, and the broken lines leading from point "A" to point "X" indicate the course the deceased followed in crossing the track and in then turning north to the point "X," where, as before stated

she remained standing. The parallel lines on either side of the track indicate the right of way fences. The crossing in question is a country crossing at which the defendant maintained no station building, but at which it, nevertheless, stopped its trains on signal to receive or to discharge passengers.

The deceased lived at Logan, Utah, and she had once or twice before the day of the accident boarded one of its trains at the crossing in question, and was familiar with the surroundings. On October 27, 1915, the evening in question, the train was due at the crossing going north at about 6 o'clock p. m. On that day the deceased visited her brother-in-law, who lived about three-quarters of a mile from the crossing in question, and who, at about 6 o'clock p. m., took her to the crossing in his buggy to meet the train. The train was late, however, and after waiting about three-quarters of an hour, he left the deceased there on the west side of the track and went home. The train arrived at the crossing at about 7 o'clock p. m., and was running at a speed variously estimated by the witnesses of from twenty-five to thirty-five miles an hour. It seems that the train operator did not intend to stop at the crossing on the evening in question.

There is much evidence respecting the surroundings at the crossing, and that there was no light provided or maintained there by the defendant, and that there were no conveniences provided for prospective passengers to get off or on the trains, etc. In cases where there is a conflict in the    1, 2 evidence respecting the cause of an accident, or with regard to the conduct of the person who is injured, or where there are no eye-witnesses who saw the accident, all of those matters are important; but in a case like this, where we have eyewitnesses who saw just how the accident occurred and who saw the deceased just before and at the very moment the collision took place, the evidence of the eyewitnesses is necessarily controlling. In this case two witnesses who saw the accident testified on behalf of the plaintiffs. Their testimony is uncontradicted in any particular, and therefore the plaintiffs are bound thereby. One George Maughan, a witness

called by plaintiffs, testified that he was on the north-bound train on the evening in question; that the train was "about an hour late"; that there were two cars in the train, and he was sitting on the west side in one of them; that as the train came around the curve, at the point marked "B" on the plat, he leaned out of the west car window. His testimony, as recorded in the bill of exceptions, then proceeds as follows:

"Q. What did you see that attracted your attention, if anything? A. Well, I didn't see anything when I was right under the bridge. Q. As you came around it, what did you first notice? A. When we were turning the bend there was a light thrown around. I seen a lady there, standing there. She was right on the east side of the track, and the light struck her. She followed the light across the track. She got across the track all right. When she got on the west side of the track she was maybe right on the end of the ties right there, and she turned her head to the north. The light was facing her at the time the car hit her. Q. That is, she turned her face to the north? A. Yes, sir. Q. And her back to the south? A. Yes, sir. Q. You say that she was about at the end of the tie west of the west rail? A. Yes, sir. I think she was just about on the end of the tie, maybe standing right on the end of the tie, a little more out. * * * Q. I understood you to say when you first noticed her she was east of the track? A. Yes, sir. Q. And that she crossed over both rails and turned and looked north? A. Yes, sir. Q. Did you notice whether she was walking, started to walk after she had crossed the track? A. I believe that she either took one or two steps to the north. I think, as near as I could judge in the short time there was. Q. Then what did you notice? A. Why, I seen the car hit her."

This witness also testified that when the deceased took one or two steps to the north the train was "twenty or thirty feet, something like that, as near as I could tell" from the deceased. The witness further testified:

"Why, I know that when she nearly got to the track she put her hand in the light. She put her left hand up. She was then on the east side of the east rail, and was walking

west. She put it somewhere to her face or to her head. It was the hand nearest the train.''

It is not necessary to quote the testimony of the other eye-witness, for the reason that there is no conflict in the testimony of the two, and the testimony of the other merely corroborates the witness we have quoted in so far as he testified to the same matters. The other witness, however, said that when he saw the deceased ''she was standing erect with her back to the car''; that is, the approaching train. He further said that at that moment:

''I thought she was away [from the track] far enough for the car to miss her, but she happened to be close enough to be struck by the car.''

The testimony showed that the deceased was forty-nine years of age, and was possessed of all her faculties.

Defendant's counsel contend that this is a case where, in view of the undisputed evidence, we must determine the question of the deceased's negligence as a matter of law. They further insist that the principle involved here is the same as the one which controlled the three cases of *Wilkinson* v. *Railroad*, 35 Utah, 110, 99 Pac. 466, *Pratt* v. *Light & Ry. Co.*, 38 Utah, 500, 113 Pac. 1032, and *Bates* v. *Railroad*, 38 Utah, 568, 114 Pac. 527. In all of those cases it was held that no recovery could be had for the reason that the negligence of the plaintiffs in those cases was the proximate cause of the injuries complained of, and in view that the evidence was without conflict, it was the duty of this court to determine that question as a matter of law. In those cases the plaintiffs attempted to cross railway tracks without discharging the duty imposed upon them by law of listening or looking for approaching trains or cars. The only difference between those cases and the one at bar is that the deceased contemplated becoming a passenger, and that she was not injured while in the act of crossing the track, but was injured after she had crossed it by remaining or going too near the track. It is very clear from the testimony that the deceased saw the train approaching from the south, and was preparing to board it when it came to a stop. The inference to be

deduced from all the evidence is also very strong, if not con-
clusive, that the men in charge of the train did not intend to
stop at the crossing in question on that trip, but intended to
pass on northward. As before stated, the brother-in-law of
the deceased left her on the west side of the track, but, for
some unknown reason, she must have passed to the east side
again after her brother-in-law had left her. At all events she
was seen a few feet east of the track when the train was some
700 or 800 feet south of the crossing on which she was standing.
The testimony is all to the effect that passengers get off and on
trains from the west side of the track. The deceased therefore
again passed to the west side to board the train. After having
crossed the rails, however, she there turned to the north, and
took one or two steps in that direction. She, therefore, did
not pass beyond the danger zone of the approaching train, but
as the witnesses say, she turned parallel with the track and
stood facing north with her back turned to the approaching
train. She, therefore, stood so near the track that the front
car struck her and threw her "six or eight feet," as the wit-
nesses put it, to the west of the track. In view that she had
passed entirely over both rails and then turned to the north
parallel with the track, it is not a case of being struck by a train
while in the act of crossing the track, but it presents a case
where a pedestrian has had ample time and opportunity to
reach and to remain at a place where he is safe, but, never-
theless, places himself, carelessly, in a place of danger. We
say carelessly because the evidence is beyond dispute that
there was nothing to detract the deceased's attention and
nothing to confuse her mind or to obscure her vision. Nor
was she threatened with physical injury from diverse sources
or causes. It is a clear case where the deceased placed herself
so near a railway track that a passing train must of necessity
come in contact with her person in passing along and over
the track. If there is any difference in principle between
this case and the three cases before cited, we fail to perceive it.
If the deceased had stood upon the track under the circum-
stances here disclosed until she was struck, no one could, in
reason, contend that the position which she carelessly assumed

was not the proximate cause of her injury. If that be so, how can it reasonably be contended that the position which she carelessly assumed, so near the track as to be in the path of the passing cars, likewise was not the cause of her injury? Where one voluntarily assumes a position on or so near a railway track that a train of cars in passing on the track must necessarily strike him, can reasonable minds differ as to whether his act in so placing himself was the proximate cause of injury in case the cars strike him? We think not. What is there to differ about? It is physically impossible for one to escape injury if he remains either on or so near a railway track as to be in the path of a passing train of cars. Even children are aware of the danger under those circumstances. This case is not distinguishable from the case of *Steggell* v. *Salt Lake & Utah R. Co.*, 50 Utah, —, 167 Pac. 237.

The only remaining question, therefore, is, Is there anything in the evidence from which the jury could find an excuse for the conduct of the deceased in taking a position so near the railway track? Something is said by plaintiff's counsel about the brilliancy of the headlight. Under the 4 statute it was the duty of the defendant to provide its trains with headlights. Had it failed in that, the failure would have constituted negligence. But the evidence is conclusive that the rails of the whole track were visible at the point where the deceased was standing. The two witnesses saw the rails when they were 700 or 800 feet south of the crossing, and continued to see them up to the instant the deceased was struck by the car. What others saw she must be deemed to have been able to see. As pointed out before, there is nothing disclosed by the evidence which would excuse her conduct. This court, in a number of cases, has illustrated and applied the conditions and circumstances under which a jury may find an excuse for the deceased's conduct in determining the question of contributory negligence. See *Newton* v. *Railroad Co.*, 43 Utah, 219, 134 Pac. 567; *Gibson* v. *Utah L. & T. Co.*, 46 Utah, 562, 151 Pac. 76; *Oswald* v. *Railroad*, 39 Utah, 245, 117 Pac. 46. In the first two cases we went as far as permissible to go in permitting a jury to pass upon the

question of contributory negligence. In the last case cited we held that the plaintiff was prevented from recovering upon the ground of contributory negligence as a matter of law. In those cases it is held that so long as there is any question of fact upon which reasonable minds may differ and arrive at different conclusions in determining the question of negligence or contributory negligence, the question is for the jury, but when there are no facts or circumstances which would authorize reasonable minds to differ, the question becomes one of law. When, as in this case, there can be no doubt whatever regarding the proximate cause of the accident, nor any doubt that it was wholly within the power of the deceased at any moment before the collision to have averted it by merely moving a foot or two out of the zone of danger, this court cannot shirk its duty in determining the result. Before a judgment for damages can be sustained there must be some act, either of commission or omission, on the part of the defendant in the action constituting negligence, and it must not appear as a matter of law that the plaintiff's own conduct caused the injury and consequent damages. If no negligence is shown on the part of the defendant, or if it appear as a matter of law that the plaintiff's inexcusable negligence caused the injury and damages, then to allow a judgment for damages to stand would be equivalent to transferring property from one person to another without sanction of law, and hence without right. In this case it is quite immaterial whether the defendant was guilty of any or of all of the acts complained of since all of those acts, taken either singly or in combination, merely constituted the ultimate, while the deceased's inexcusable conduct constituted the proximate cause of the injury. The district court erred, therefore, both in refusing to grant defendant's motion for a nonsuit and in refusing to direct the jury to return a verdict in favor of the defendant as requested by the defendant.

A number of the court's instructions are also assailed. Those that are more especially complained of were given by the court on its motion upon the question of contributory negligence. The court, in its instructions on that sub-

ject, enumerated various things which it told the jury they might consider in determining the alleged contributory negligence of the deceased. Counsel insist that the court erred in that regard by enumerating things not contained in the plaintiff's complaint. While it is true that the plaintiff in a negligence case must recover, if at all, on one or more of the acts of negligence set forth in his complaint, yet, in determining the question of contributory negligence, the jury are not limited to the acts of negligence described in the complaint, but they may consider any fact, inference, or circumstance disclosed by the evidence upon that subject. The only criticism to which the court's instructions upon that subject are open is that the court undertook to name specific things or acts which the jury might consider in determining contributory negligence. It is always dangerous for a court to single out specific things or acts in charging the jury. If, in doing that, some acts or things that are material should be omitted, the instructions would be vulnerable to attack, and might require a reversal of the judgment. The court should merely tell the jury to consider the evidence in the case upon that subject, and from a consideration of the whole evidence to determine the question of negligence or contributory negligence, as the case may be. We do not hold that the instructions complained of in this case constitute reversible error, but we do hold that the instructions should not have been given in the form they were given.

There is no reversible error in the other assignment relating to the giving of instructions and in refusing the requests of the defendant. Nor did the court commit error in the admission of the evidence complained of.

For the reasons stated, the judgment is reversed, and the cause is remanded to the district court of Cache County, with directions to grant a new trial. Costs to appellant.

McCARTY, CORFMAN, THURMAN, and GIDEON, JJ., concur.