## CRONQUIST et al. v. SMITH et al.

No. 2460. Decided May 8, 1913 (133 Pac. 130).

1. PRINCIPAL AND AGENT—EVIDENCE. Declarations of the alleged agent are not admissible to prove his agency. (Page 579.)

2. PRINCIPAL AND AGENT—EVIDENCE—SUFFICIENCY. In an action to recover the value of alfalfa seed alleged to have been purchased by defendants' agent, evidence *held* insufficient to establish the agency. (Page 579.)

APPEAL from District Court, First District; *Hon. W. W. Maughan,* Judge.

Action by Olof Cronquist and James Adams against W. H. Smith and David Andrew.

Judgment for plaintiff. Defendant Smith appeals.

REVERSED AND REMANDED.

*George Q. Rich* for appellant.

*A. A. Law* for respondent.

STRAUP, J.

This is an action to recover the value of alfalfa seed alleged to have been sold and delivered to the defendants. The case was tried to the court and a jury. The plaintiffs had judgment, from which the defendant Smith has appealed.

It is conceded that the seed was not sold directly to Smith and that his liability is wholly dependent upon proof of agency between him and the defendant Andrew; the plaintiffs contending in this respect that Andrew was the agent of Smith, and as such purchased the seed for him. The assignments in such particulars present questions of the sufficiency of the evidence, the admission of testimony over Smith's objections, and the charge.

The evidence shows Smith was in the employ of the W. O. K. Elevator Company at Smithfield, Cache County, and was one of its purchasing agents in buying farm products, including alfalfa seed. The company there maintained a storage plant for seed and a storage warehouse. About three weeks before the time in question Andrew approached Smith at the warehouse and told him that they (Smith and the company) were paying too much for alfalfa seed and that he believed "he could make some money buying seed and selling it to you fellows." Smith told him, "All right, just so that the seed equals the condition that we are buying right here every day, we will take all there is left in Cache Val-

ley—it don't make any difference whether it is by you or through a firm or anybody else—and receive it here at our warehouse." Andrew inquired and was told the price that would be paid, providing the seed came up to samples then exhibited to him, one price for first-class and another for second-class seed. About three weeks after that Andrew, by wagon, brought to the warehouse alfalfa seed which he had purchased from the plaintiffs and from one Mr. Watkins, in Cache Valley. The seed was in different sacks. Smith examined it and found portions of it, that purchased from the plaintiffs, of an inferior quality, "nothing but tailings," and declined to buy it and told Andrew to take it away. Andrew then informed him that he had given the plaintiffs and Watkins checks and had signed Smith's name to them for the purchase price of the seeds. Smith at once took him to task for that, told him that he had no authority to give checks, and that they would not be honored. Smith immediately telephoned the plaintiffs and Watkins that Andrew had no authority to give the checks; that they would not be honored; and that payment on them would be stopped, which was done. He, however, told Watkins that the company would buy the seed which he had delivered to Andrew but would give the company's check for it. That was agreeable to Watkins and the matter was fixed up with him that way. Smith, in telephoning the plaintiffs, told them that the company would not buy their seed because of its inferior quality and requested them to come to the warehouse, inspect the seed, and take it way, and "straighten the matter out." This the plaintiffs declined to do and stated that they had nothing "to fix up." Andrew left the seed at the warehouse and went away. Smith thereupon had it placed in the warehouse for safe-keeping and held it in the sacks as it came to the warehouse, subject to the orders of the plaintiffs, and so informed them. Later the plaintiffs saw Smith at the warehouse. They asked him if Andrew was not his agent and stated that they thought he was because he had signed his name to the checks. Smith told them that he was not his

42 Utah 37

agent; that he had no authority whatever to give checks; and that he (Smith) had not bought the seed and was not "a party to the deal." The plaintiffs replied that they could not see why he was not "a party to the deal," with his name signed to the checks. One of the plaintiffs testified that Smith then also said, "Andrew came to him and wanted to buy seed for him and told him he could buy seed for him if he could bring the seed I (Smith) wanted and that Andrew said, 'I have got no money;' and Smith said, 'You go ahead; it will be all right.'" Smith showed them the "tailings" Andrew had brought to the warehouse. The plaintiffs testified that they could not tell whether the seed so shown them was the seed they had sold and delivered to Andrew. They, however, admitted that some of the seed delivered to Andrew was first grade, some second grade, and some tailings. In selling and delivering the seed to Andrew one of the plaintiffs acted for the other. Several days before the sale Andrew told one of the plaintiffs that he was buying seed, and that "he wanted it to go to Smithfield to Smith." Outside of that nothing is made to appear that in the negotiations anything was said that Andrew was acting or buying for any person other than himself until the seed had been loaded on the wagon and Andrew had written the check and handed it to the plaintiff transacting the business. Then, according to the testimony of the plaintiff so receiving the check, Andrew said, "The man who is back of this, whose name is on this, makes that check good." The plaintiff replied, "That is good;" and testified: "When I seen Mr. Smith's name on the check, that settled it with me, so he (Andrew) fixed up the check again. (In making it out it had been blurred.) When he got it correct he got his seed and I took the check. So when I saw Mr. Smith's name on the check for that seed that settled it with me, so far as I was concerned. The seed would never have rolled out of the yard (except for Smith's name on the check). I would not have taken Andrew for the money." One of the plaintiffs also testified that some three weeks before the sale he inquired of Smith the price of alfalfa seed, and that later

Smith made him an offer which the plaintiff declined. But nothing was said by either concerning Andrew.

This is substantially all the evidence bearing on the assignment under consideration. The testimony showing Andrew's statement to one of the plaintiffs that "Smith was behind this" was received over Smith's objection. Of course agency cannot be shown by the declaration of the alleged agent. That is elementary. That testimony was **1, 2** improperly admitted. But with it in we think the evidence insufficient to show agency between Smith and Andrew. This is so apparent that nothing further need be said about it. Smith's motion for a nonsuit and for a direction of a verdict in his favor ought to have been granted. With this view, we find it unnecessary to consider the questions concerning the charge.

The judgment of the court below as to the defendant Smith is reversed, and the cause as to him remanded for a new trial. Costs to the appellant.

McCARTY, C. J., and FRICK, J., concur.