## KARREN v. BAIR.

No. 3992. Decided April 16, 1924. (225 Pac. 1094.)

1. BILLS AND NOTES—TESTIMONY HELD TO SHOW INDORSEMENT. Testimony that defendant signed his name on back of negotiable note admitted in evidence without objection, *held* to show indorsement.

2. BILLS AND NOTES—INDORSEMENT IN BLANK RENDERS NOTE PAYABLE TO BEARER. Where negotiable note is indorsed in blank, it was as though it had originally been made payable to bearer.

3. BILLS AND NOTES—RULE STATED AS TO PRESUMPTION THAT SUBSEQUENT HOLDER IS ONE IN DUE COURSE. In absence of evidence of fraud, duress, or other infirmity in inception of a note, a subsequent holder *held* entitled to rely on statutory presumption that he was a holder in due course.[1]

4. EVIDENCE—JURY NOT PERMITTED TO BASE INFERENCE ON INFERENCE. While juries are given great latitude in deducing inferences from established facts, they may not base an inference on an inference.

5. EVIDENCE—JURIES MAY NOT WITHOUT REASON OVERTURN LEGAL PRESUMPTIONS OR ARBITRARILY DISREGARD POSITIVE STATEMENTS OF WITNESSES. Juries may not without reason overturn legal presumptions or arbitrarily disregard positive statements of witnesses.

6. BILLS AND NOTES—BREACH OF EXECUTORY AGREEMENT CANNOT ORDINARILY BE SET OFF AGAINST NOTE ASSIGNED BEFORE BREACH.

---

[1] *Cole Banking Co.* v. *Sinclair*, 34 Utah, 454, 98 Pac. 411, 131 Am. St. Rep. 885.

Where a nonnegotiable note given pursuant to an executory agreement is assigned before breach, consequences or damages incident to breach of such agreement ordinarily cannot be set off against note, and this rule is much stricter where note is negotiable.

7. BILLS AND NOTES—IN ACTION BY SUBSEQUENT INDORSEE, MAKER HELD NOT ENTITLED TO SET OFF CLAIM AGAINST PRIOR INDORSEE. Where a note given to a company for beet seed was transferred to plaintiff prior to resolution by that company to hold money derived from beet seed in its treasury for a certain purpose, a contention that maker should be allowed to set off against plaintiff his claim against company, as proceeds of the beet seed could not be used for that purpose, *held* without merit.

8. COURTS—PENDING APPLICATION FOR REHEARING, CASE CANNOT BE CITED AS AUTHORITY. Pending an application for a rehearing, a case cannot be relied on or cited as authority, as such an application suspends judgment.

Appeal from District Court, First District, Cache County; *M. C. Harris,* Judge.

Action by T. S. Karren against H. E. Bair. Judgment for plaintiff, and defendant appeals.

AFFIRMED.

*Irvine, Skeen & Thurman,* of Salt Lake City, for appellant.

*Clark, Richards & Bowen,* of Salt Lake City, for respondent.

FRICK, J.

The plaintiff recovered judgment against the defendant H. E. Bair, hereinafter called appellant, in the district court of Cache county. The complaint is in the usual form in actions upon promissory notes by an indorsee against a maker and indorser.

The defendant, in his answer, after denying the allegations of the complaint, set up several affirmative defenses. For the

reasons hereinafter appearing, it is not necessary to refer to the defenses in detail. It is sufficient to state that in the answer, among other defenses, the plaintiff's right to recover upon the note is assailed upon the ground that he is not the owner of the note, and, if the owner, then that he is not a holder in due course, etc. We shall, when necessary, refer to the defenses set up in the answer in the course of the opinion.

The facts developed at the trial, and which are material to this decision, in substance are that the note in question was executed by the appellant and was made payable to himself or order. At the time the note was executed, the appellant indorsed it by signing his name on the back thereof, and then delivered the same to one Marler, who was an agent and employee of the Pioneer Sugar Company, a corporation which will hereinafter be designated company. It further was made to appear that the note was given in settlement for a certain quantity of beet seed which the company had delivered to the appellant and from which he raised 20 acres of beets. Appellant admitted at the trial that the beet seed was delivered to him, that it was equal in value to the amount for which the note was given, and that he voluntarily executed the note and delivered it for the beet seed and intended to pay it. He, however, insisted, as he alleged in his answer, that before the note was executed he had entered into an agreement or contract with the company by the terms of which he had agreed to raise a certain number of acres of beets, and the company had agreed to purchase those beets at a stipulated price per ton and to provide proper facilities for the appellant to deliver said beets to the company. Appellant also testified that the company had breached that contract and had failed to purchase and pay for said beets, by reason of which he was compelled to sell the same for a price less than the company had agreed to pay therefor, in consequence of which he was damaged in a sum in excess of the amount of the note. There was, however, no evidence that there was any fraud, duress, misrepresentation or other infirmity in the inception of the note in question, nor that the appellant was not liable upon the note for the full face

value thereof; but, as stated, he insisted that he had a right to set off the damages which he alleged he had sustained, against the note, and to accomplish that purpose in this action the company was made a party defendant therein, on request of appellant.

The plaintiff testified that the note was delivered to him by the company long before maturity in part payment for services rendered by him for the company and which were then unpaid, and that he gave the company credit for the full amount of the note; that he had no knowledge or notice of any infirmity in the note, or that the appellant asserted any claim of any kind against the validity of the note.

At the trial it was contended on behalf of appellant that the note was not delivered to the plaintiff by the company. The substance of the evidence in that regard is to the effect that the secretary of the company produced some of the company's books, and he testified that there was no record in the books produced by him that the note in question had been delivered to the plaintiff, or that any other disposition had been made of it, or what, if anything, the company received for the note. The secretary, when on the stand, however, admitted that the company's records with respect to the disposition of the notes that were received for beet seed were not "complete" or "up to date," and that it was "possible" that the books did not show all the transactions with respect to the notes. Another witness (who, the plaintiff had testified, had delivered the note to him) testified that he did not remember the incident. Nor did he remember what became of the note. He, however, said that he did not have the notes obtained for beet seed in his possession or under his control. In this connection, it should be stated that it was also made to appear that the company in some correspondence recognized plaintiff's right to the note, and that it never paid him what it owed him for services rendered except by the note in question.

Upon substantially the foregoing state of facts, the court, upon request of plaintiff, directed the jury to return a verdict in his favor, which was accordingly done. Judgment

was duly entered upon the verdict, from which appellant prosecutes this appeal.

The principal errors assigned, and the only ones argued in the brief, are that the court erred in denying appellant's motion for a nonsuit and in directing the jury to return a verdict in favor of plaintiff.

The contention that the court erred in denying the nonsuit is based upon the ground that plaintiff had failed to prove the negotiation of the note, in this, that he did not prove that the appellant had indorsed the same. Upon that subject the record shows that plaintiff's counsel, after having the note in question marked for identification as "Exhibit A," handed the same under that designation to the witness Marler, to whom, as hereinbefore stated, the note was delivered by appellant. The witness Marler testified that the appellant signed his name on the face of the note, and then also wrote his name on the back; that he saw the appellant write his name on both the face and back of the note designated as "Exhibit A," and that after so signing and indorsing the same it was delivered to the witness. The evidence thus covers both the face and the back of the note which was referred to as "Exhibit A." Counsel then offered in evidence "Exhibit A," and it was received without objection. In view of this evidence, it would be a mere work of supererogation to attempt to give additional reasons, or to cite authorities, why the execution and delivery of the note were fully established. In addition to the foregoing it must be remembered that the plaintiff was in possession of the note, produced it in court, and, the same being indorsed in blank, it was as though it had been originally made payable to bearer. 1 Joyce, Defenses to Commercial Paper, § 601, and cases cited. There is therefore no merit whatever to this contention, and hence it must fail.

It is next contended that the court erred in directing the jury to return a verdict for the plaintiff. In support of that contention, it is vigorously insisted that the burden of proof was cast on the plaintiff to show that he was a holder in due course. In view of the evidence, the substance of which we have stated, such is not the law. Under the circumstances,

the plaintiff was entitled to rely upon the statutory presumption that he was a holder in due course. 1 Joyce, Defenses to Commercial Paper, § 645. As before pointed out, there was no evidence whatever of fraud, duress, or other infirmity in the inception of the note in question. Upon that point the evidence is entirely without conflict. The burden of proof was therefore not cast upon the plaintiff. The rule in that regard is correctly stated by this court in the case of *Cole Banking Co.* v. *Sinclair*, 34 Utah, 454, 98 Pac. 411, 131 Am. St. Rep. 885. The rule there adopted and approved is taken from Eaton & Gilbert on Commercial Paper, which is stated in the following words:

"In the absence of proof of fraud or misappropriation, the presumption is that the indorsee of a negotiable bill or note is a bona fide holder for value, and this presumption is not repelled merely by proof that the bill or note, as between the immediate parties, was without consideration, and was made, indorsed, or accepted by one for the sole accommodation of the other. When no other proof is given the holder is not bound to prove a valuable consideration. * * * It will be noticed that the statute provides that proof of a defective title shifts the burden of proof upon the holder. A title is defective where the instrument is obtained for an illegal consideration. It follows, therefore, that if the consideration be shown to be illegal, as for a gambling debt, an unlawful sale of commodities, or as being tainted with usury, the burden of proof will then rest upon the plaintiff to show that he was a holder in due course; but proof of a want or failure of consideration does not in most jurisdictions operate to shift the burden of proof to the plaintiff."

The rule above quoted, so far as the writer is informed, is now held to be the rule in all jurisdictions in which the Negotiable Instruments Act is in force. It is insisted, however, that the evidence upon plaintiff's ownership of the note was conflicting, and hence that question should have been submitted to the jury. The evidence upon that question, as hereinbefore pointed out, was not conflicting. True, the secretary of the company testified that the books and records kept by the company did not show the delivery of the note to the plaintiff. Another witness said that he could not state from memory what became of the note. All that, however, did not contradict the plaintiff's positive statement that the note was delivered to him in part payment of what the com-

pany owed him for past services and that the company received full credit for the amount of the note. Nor did it overthrow the presumption that plaintiff's possession was lawful, and that is especially true in view of the fact that the company subsequently recognized plaintiff's ownership of the note and its failure to deny that it had obtained credit for the same as plaintiff testified. To hold that a jury, upon such qualified statements, and in the face of plaintiff's positive evidence and the legal presumptions in his favor to which we have referred, would be justified in finding that he was not the owner of the note, would result in permitting a jury to base its finding upon mere speculation and conjecture. While juries are given great latitude in deducing inferences from established facts, they, nevertheless, are **4, 5** not permitted to base an inference upon an inference. Nor may they, without any reason, overturn legal presumptions or arbitrarily disregard the positive statements of witnesses. See *Leavitt* v. *Thurston,* 38 Utah, 351, 113 Pac. 77, where the rule in cases like the one at bar is stated. If juries were permitted to do that, then court trials and the rules of evidence would become a mere delusion and a snare.

In this connection, the fact, which is one of general knowledge, should also be kept in mind that in cases where promissory notes are given in pursuance of executory agreements which notes are negotiated before due, and where the provisions of the executory contracts or some of them are breached, or where the enterprise terminates in failure that juries are very prone, in viewing the transactions retrospectively, to confuse too much optimism and lack of sound business judgment on the part of promotors with bad faith or fraud, and will, if possible, protect the makers of the notes who may be, and usually are, also innocent. The maintenance of the integrity of commercial paper is, however, too important to permit it to be assailed in the hands of innocent parties without adequate reasons. In order that the integrity of commercial paper may be. better protected, the Uniform Negotiable Instruments Act was conceived and adopted in England and afterwards was also adopted by nearly all of the States of the Union. It certainly is of as much importance

that the best interests of a large number of farmers and business men be maintained by permitting them to pledge their credit in the form of negotiable instruments and to protect the integrity of such instruments in the hands of those who obtain them in due course for value, as it is to protect those who without due consideration and caution and at the instance of optimistic promoters, enter into speculative enterprises which afterwards for various reasons fail of consummation. The rights of all must be protected.

The failure of the speculative enterprise into which appellant entered constitutes the whole burden of his complaint in this action. One insuperable obstacle to his contention, however, is that the enterprise was merely an incident to and not the basis for the giving of the note in question. The note in question was given in settlement for beet seed the market value of which appellant concedes was equal to the face value of the note. He also conceded at the trial that he intended to pay for the beet seed, that he gave the note in settlement for the same, and that he delivered it for that purpose. There is, therefore, no reason why the note in question should not be paid. Indeed, appellant concedes as much. He, however, insists that inasmuch as the company breached the executory contract in failing to purchase his beets, and that he was compelled to sell them for less than the price the company had agreed to pay him, for that reason he should be permitted to offset the damages in that regard against the note. The difficulty with that contention, however, is that, even though it were conceded that appellant is entitled to damages as against the company, he nevertheless cannot make that claim available as against the plaintiff. In this action the fact which is not disputed is that the contract with the company was an executory one, that the beets were not to be delivered until months after the note had been executed and delivered to the plaintiff and he had credited the company with the full amount thereof on an account for wages then earned and past due. The breach, therefore, did not occur until long after the plaintiff had obtained the note in question. It is doubtful, therefore, whether the appellant could successfully have counterclaimed the damages claimed by him, even

though the plaintiff had been merely assignee of the note and not a holder in due course. Where a note is given pursuant to the terms of an executory agreement which is assigned before a breach occurs, the consequences or damages incident to the breach ordinarily cannot be set off against the note, even though it be unnegotiable. See *Marling* v. *Fitz Gerald*, 138 Wis. 93, 120 N. W. 388, 23 L. R. A. (N. S.) 177, 131 Am. St. Rep. 1003. The rule is, however, much stricter in cases like the one at bar where the note is negotiable and is negotiated before maturity in due course. In *United States National Bank* v. *Floss*, 38 Or. 68, 62 Pac. 751, 84 Am. St. Rep. 752, the rule is clearly stated in the second headnote in the following words:

"The breach of an executory contract which is the consideration for a negotiable promissory note is not a defense at all against such note in the hands of an indorsee for value before maturity, even if he had notice of the contract, unless before purchasing he also knew of the breach."

In the case of *McNight* v. *Parsons*, 136 Iowa, 390, 113 N. W. 858, 22 L. R. A. (N. S.) 718, 125 Am. St. Rep. 265. 15 Ann. Cas. 665, the court, in the course of the opinion, states the rule as it is stated by the Supreme Court of Oregon, and further states that the rule is universally applied. Many cases are cited in support of the court's statement. See, also, 2 Joyce, Defenses to Commercial Paper, § 690, where the rule is stated and the authorities are collated.

Nor can appellant's contention prevail that inasmuch as the money derived from the sale of beet seed was by a resolution of the board of directors of the company to be held in the treasury of the company for certain purposes, therefore it could not be applied to pay plaintiff. In view that the evidence is undisputed that the resolution was not passed until October and at least several months after the note had been delivered to the plaintiff, the contention is not tenable.

Appellant's counsel also cite and rely on *Capitol Hill State Bank* v. *Rawlins Nat. Bank*, 24 Wyo. 423, 160 Pac. 1171, 11 A. L. R. 937, as supporting their contention. An examination of that case, however, will easily convince the examiner that in so far as the decision in that case sustains counsel's

contention, it is based upon facts entirely different from those in the case at bar, and in so far as the facts conform to the facts in this case the decision is in strict harmony with the rule hereinbefore laid down. Indeed, that case strongly supports the rule hereinbefore stated.

Other cases cited by counsel have no application to the facts in this case and need not be further referred to. The case of *National Bank of the Republic* v. *Price,* recently decided by this court, is also relied on. That case is, however, not in point here. But quite apart from that fact there is an application for a rehearing pending in that case, and, under the practice of this court, such an application, while pending, suspends the judgment, and hence that case cannot be relied on or cited as authority.

From what has been said it necessarily follows that the district court committed no error in its rulings or in directing a verdict for the plaintiff, and hence the judgment should be, and it accordingly is, affirmed, with costs to plaintiff.

GIDEON and CHERRY, JJ., and WIGHT and WOOLLEY, District Judges, concur.

WEBER, C. J., and THURMAN, J., disqualified, did not participate herein.