## SWEATMAN v. LINTON et al.

No. 4267.   Decided November 12, 1925.   (241 P. 309.)

1.  PRINCIPAL AND AGENT—EMPLOYER NOT LIABLE FOR ACT OF AGENT BEYOND SCOPE OF HIS EMPLOYMENT. If an agent does an act injurious to another while acting within range of his employment, the master is responsible; but, if agent goes beyond range of his

Appeal from Seventh District

employment and of his own will does an unlawful act injurious to another, agent is liable, but master is not.[1]

2. MALICIOUS PROSECUTION—EVIDENCE HELD TO SHOW THAT DEFENDANT'S AGENT ACTED BEYOND SCOPE OF AUTHORITY IN PROCURING PLAINTIFF'S ARREST AND IMPRISONMENT. In action against company and its agent for alleged malicious prosecution of plaintiff in having charged him with issuing check without sufficient funds for payment, in violation of Comp. Laws 1917, § 8347, evidence *held* to show that agent, in procuring plaintiff's arrest and imprisonment, was acting beyond the scope of his authority.

3. EVIDENCE—ADMISSION OF STATEMENT OF AGENT TO PLAINTIFF THAT HE WAS ORDERED BY HIS PRINCIPAL TO HAVE PLAINTIFF ARRESTED HELD ERROR. In action against company and its agent for malicious prosecution, in that agent procured plaintiff's arrest and imprisonment for alleged violation of Comp. Laws 1917, § 8347, admission of statement of agent to plaintiff that he was ordered to do it by the company *held* error.

4. MALICIOUS PROSECUTION—WHETHER DEFENDANT HAD PROBABLE CAUSE AND ACTED IN GOOD FAITH HELD FOR JURY. In action for malicious prosecution, in that defendant had plaintiff arrested and imprisoned for alleged violation of Comp. Laws 1917, § 8347, question whether defendant had probable cause to believe plaintiff guilty of offense charged, and whether he acted in good faith, *held* for jury under the evidence.

5. MALICIOUS PROSECUTION—FULL STATEMENT TO REPUTABLE ATTORNEY AND ACTION ON HIS ADVICE GOOD DEFENSE. Generally, it is a defense to action for malicious prosecution that defendant made a full and fair statement to a reputable attorney and acted upon advice of such attorney that there was probable cause.[2]

---

[1] *Cronquist* v. *Smith,* 42 Utah, 575, 133 P. 130.

[2] *Wright* v. *Ascheim,* 5 Utah, 480, 17 P. 125; *McKenzie* v. *Canning,* 42 Utah, 529, 131 P. 1172.

Corpus Juris-Cyc. References.

[1] Agency 2 C. J. p. 824 n. 59; p. 827 n. 83; p. 848 n. 19; p. 851 n. 34.

[2] Malicious Prosecution 38 C. J. p. 498 n. 72.

[3] Agency 2 C. J. p. 938 n. 31.

[4] Malicious Prosecution p. 502 n. 19; p. 506 n. 39.

[5] Malicious Prosecution p. 428 n. 40; p. 431 n. 65; p. 432 n. 88; p. 433 n. 90, 5; p. 435 n. 16, 28.

[6] Appeal and Error 4 C. J. p. 1184 n. 42.

[7] Appeal and Error 4 C. J. p. 1184 n. 42.

6. APPEAL AND ERROR—JOINT JUDGMENT AGAINST TWO DEFENDANTS MAY BE REVERSED TO ONE AND AFFIRMED AS TO THE OTHER, WHEN NO INJUSTICE TO LATTER RESULTS. Under Comp. Laws 1917, §§ 6854, 6995, on appeal from joint judgment against defendants charged jointly as tort-feasors, court may reverse as to one defendant and affirm as to the other, where no injustice results to latter.

7. APPEAL AND ERROR—JUDGMENT AGAINST BOTH DEFENDANTS REVERSED, THOUGH EVIDENCE WARRANTED AFFIRMANCE AS TO ONE, WHERE INJUSTICE WOULD RESULT TO LATTER. On appeal from joint judgment against company and its agent in action for malicious prosecution, held that, in view of admission of incompetent testimony and large verdict against agent, judgment as against both will be reversed, though evidence warranted judgment as against agent.
FRICK, J., dissenting in part.

Appeal from District Court, Seventh District, Carbon County; *George Christensen*, Judge.

Action by William Sweatman against R. J. Linton and another. Judgment for plaintiff, and defendants appeal.

REVERSED, and new trial directed.

*Henry Ruggeri*, of Price, and *E. S. Chambers* and *M. G. Saunders*, both of Pueblo, Colo., for appellants.

*L. A. McGee*, of Price, for respondent.

GIDEON, C. J.

William Sweatman instituted this action to recover damages upon an alleged malicious prosecution on the part of R. J. Linton and the Nuckolls Packing Company, a corporation. The complaint charges:

"That on the 1st day of April, 1924, at Price, in the county of Carbon, state of Utah, the defendants then and there, maliciously intending to injure the plaintiff in his good name and reputation, and intending to cause him to lose time, expense, and injury to his business and property, appeared before J. H. Hammond, a justice of the peace of Price precinct, Carbon county, state of Utah, and maliciously, and without any probable cause whatsoever, charged the plaintiff, before the said justice of the peace, with having committed the crime of violating section 8347, Compiled Laws of Utah

1917, as follows, to wit:    'Issuing checks without sufficient funds for payment.'  *  *  *"

The complaint further alleges the arrest of plaintiff in Grand Junction, Colo., his imprisonment, his return to Carbon county, Utah, his incarceration in the county jail, his subsequent trial and acquittal.

Plaintiff prayed for expenses in employing counsel, expenses on his return trip to Price, and general damages occasioned by humiliation, disgrace, and embarrassment, and loss of time.

Separate answers were filed by defendants. Linton denied malice, alleged affirmatively that he in good faith believed that he had probable cause for instituting the prosecution of plaintiff, that he had fairly and fully stated the facts to the county attorney of Carbon county, and was by him advised that he had probable cause to have plaintiff arrested. The packing company, in its answer, denied any participation in the prosecution; denied any knowledge of the arrest, and claimed that it was not a party to the prosecution and was not advised of it until the institution of the present action.

Trial was had resulting in a judgment in favor of plaintiff and against both defendants.

At the close of plaintiff's testimony, the packing company separately moved for nonsuit. A like motion was made on behalf of both defendants jointly. At the close of the testimony in the case, motions for directed verdict were interposed upon substantially the same grounds as alleged in support of the motions for nonsuit. The packing company's motion was based upon the claim that there was no evidence showing that it, through its officers or otherwise, had caused the arrest of plaintiff or had participated in such arrest, or that the company or its officers had been advised or knew of the arrest, or that there was any benefit accruing to the company by such arrest. The motion of the defendants made jointly was upon the grounds that the testimony fails to show that defendants were, or either of them was, actuated by malice in procuring the prosecution of the plaintiff; further, that the uncontradicted testimony shows that Linton

Sweatman v. Linton et al., 66 Utah 208

disclosed to the county attorney all of the facts leading up to the arrest of plaintiff, and that Linton acted upon the advice of said county attorney in filing the complaint against plaintiff and procuring his prosecution, and, further, that the evidence shows that Linton acted in good faith in instituting such prosecution and upon the advice of the county attorney. The court denied the motions and submitted the case to the jury. These ruilngs are assigned as error.

The motions for nonsuit and directed verdict on behalf of the packing company should have been granted. It appears from the testimony that the packing company had its place of business at Pueblo, Colo.; that it had a distributing office for the sale of its products in Salt Lake City, Utah, and had a local agent, or, as designated by plaintiff, a local manager, at Price, Utah. It was the duty of the agent at Price to solicit buyers for the products of the packing company at that place and surrounding communities. Whether he be designated a local manager or agent, there is no controversy as to his duties. Weekly, or oftener if the trade justified, a carload of the products of the packing company was shipped into Utah. The car would be placed on a siding at Price, and Linton would take from the car such merchandise as his customers required. It was his duty to see that these goods were delivered to the several purchasers, and, usually, to collect the sale price. He generally remitted to the packing company at Pueblo. In a few instances he sent remittances to Salt Lake City. That was the extent of his authority. So far as the record shows by competent testimony, Linton instituted the prosecution of plaintiff without any directions from or knowledge on the part of the packing company that the arrest was to be made.

There is no conflict in the authorities upon the particular question here involved in so far as the packing company is concerned. The general rule stating under what circumstances a principal, such as the packing company in this case, is answerable for the acts of its agents, is clearly stated in the second headnote to *Pressley* v. *Mobile & G. R. Co.* (C. C.) 15 F. 199, as follows:

"If an agent, while acting within the range of his employment, does an act injurious to another, either through negligence, wantonness, or intention, then for such abuse of the authority conferred upon him or implied in his appointment the master or employer is responsible in damages to the person thus injured; but if the agent go beyond the range of his employment or duties, and of his own will does an unlawful act injurious to another, the agent is liable, but the master or employer is not."

The general rule announced in the foregoing and relied upon for a reversal of the judgment against the packing company was recognized by this court in *Cronquist* v. *Smith*, 42 Utah, 575, 133 P. 130. See, also, *Murrey* v. *Kelso*, 10 Wash. 47, 38 P. 879.

The duties of Linton were to sell the products of the packing company and to collect the debts for such products sold. It was not his duty to institute criminal actions against debtors of the packing company. Causing the arrest and incarceration of a debtor is not one of the "usual and ordinary means employed by creditors in enforcing payment of debts." Imprisonment for debt is prohibited by the bill of rights incorporated into the Utah Constitution. Any attempt along that line has not heretofore met the active approval of officials of the municipalities of this state.

The only testimony in the record that in any way tends to show that the packing company knew of the arrest or did anything affirmatively to cause the arrest, is the testimony of plaintiff regarding certain statements which it is claimed Linton made to plaintiff after plaintiff's arrest. At the close of plaintiff's testimony, motions for nonsuit were made as indicated above. After argument, and before the court had ruled on the motions, plaintiff's counsel asked leave to reopen the case for the introduction of further testimony, and indicated in his statement what that testimony would be. The court reopened the case. Plaintiff was again placed upon the witness stand and, over objection by defendants, testified that after his arrest and return to Price, and while he was out on bail, he met Linton on a street in that city. He also testified (quoting from the bill of exceptions) further as follows:

"After we met and he offered me his hand, he said 'I'm glad to see you.' I put my hand behind me and I said, 'I can't say as much

for you.' I kind of rebuffed him and expressed some feeling. He stepped off and said: 'Mr. Sweatman, I'm sorry you feel that way about it. It was nothing that I could help. I was ordered to do this by the company.' I argued with Crum [secretary of the packing company] that I didn't want to do it, but he says, 'You go and do it,' and I was working for him, and it was up to me to do it or quit."

The packing company assigns the admission of that testimony as error. In our judgment the testimony was clearly inadmissible for the purpose of binding the packing company. It was not a statement of the agent as to the limit or extent of his authority in the transaction of any business intrusted to him under his general employment, even if it be contended that it was admissible as defining the extent of his agency. The introduction of the evidence was an attempt by hearsay to bind the company upon a question **2, 3** admittedly not within the general scope of the agent's duty. In addition, the testimony is positive that Mr. Crum, referred to in the testimony of plaintiff as secretary of the packing company, was not in or around Price from the time of the giving of the check in controversy to the arrest and acquittal of the plaintiff. It likewise affirmatively appears from the undisputed testimony of the defendant's witnesses that no communication was had respecting the arrest between Linton and the packing company at or during that time. If this testimony of plaintiff was admissible at all, its probative value was to a very large extent overcome by the undisputed testimony that the officer of the company alleged to have directed the prosecution was not in Price at the time and did not communicate with any one respecting such arrest.

The judgment against the packing company, for the reasons indicated, must be reversed, and a new trial granted.

Passing, now, to a consideration of the arguments presented for reversal of the judgment against Linton: The complaint, as has been stated, charges the defendants jointly with maliciously, etc., causing the prosecution of plaintiff. The verdict of the jury is: "We * * * do find the issues in favor of plaintiff and against the defendants." It appears from the record that plaintiff, for a short time, owned and operated a small meat market at Price, Utah. During

the time he operated that market he purchased products from the packing company through its agent. On or about March 9, 1924, plaintiff sold his business to Laris Brothers. On or about that date plaintiff received a check from Laris Bros. for $200 as part payment of the purchase price of the market. Later he was given by Laris Bros. an additional check for $112, presumably the balance due on the purchase price of the market. After Laris Bros. had delivered this latter check, they learned that plaintiff still owed creditors of the market, and, in view that no notice of the sale to them of the market in bulk had been given as required by the Utah statute, they stated to plaintiff that payment of the check for $112 would not be made unless plaintiff paid off the creditors. On March 14th, plaintiff, then being indebted to the packing company in an amount approximately of $119, gave his check to Linton payable to the packing company. Plaintiff testified positively that at the time he delivered this check to Linton he advised the latter of the probability of the Laris Bros. check not being paid, in which event he (plaintiff) would not have sufficient funds on deposit with his bank to meet the check he was then delivering. In other words, it is plaintiff's contention that the check was delivered conditionally. That is, that it was delivered with the understanding that it was to be paid only in the event that Laris Bros. check was honored and paid. The check of Laris Bros. was drawn upon a bank located in another county. Laris Bros. stopped payment of their check for $112, and for that reason there was not sufficient funds on deposit to plaintiff's credit in his bank to pay the check of $119 for the issuance and delivery of which he was prosecuted. It is also the positive testimony of plaintiff that at the time of delivering the check he advised Linton that he was leaving the state and going to visit his daughter at Grand Junction, Colo.; that he gave Linton his Grand Junction address and requested to be advised if the check was not paid. Plaintiff did go to Grand Junction, and, while there, was advised by Linton of the nonpayment of the check. A telegram was sent by Linton to which he signed the name of the packing company addressed

to plaintiff advising him of the nonpayment of the check. No arrangements were made for the payment of the check, although there was some correspondence relative to attempting to induce Laris Bros. to honor the check given by them for $112. Under that state of facts, Linton appealed to the county attorney, and, as claimed by him, made a full statement of the facts, and was advised by the county attorney that there was probable cause for the prosecution of plaintiff.

Two defenses were interposed by Linton. One is that he had probable cause to believe plaintiff guilty of the offense charged and that he in good faith did believe there was probable cause for the prosecution of plaintiff. The second, that he is not answerable for the reason that he made a full and fair statement of the facts to the prosecuting officer and was by him advised that there was probable cause for the institution of the criminal prosecution against plaintiff.

That plaintiff stated to Linton that there would not be sufficient funds in the bank on which he had drawn the check to pay it if the Laris Bros. check were not paid is not disputed. In fact, it is admitted by Linton to this extent, that plaintiff stated to him at the time of the delivery of the check that if the check was not paid to advise him of the fact. If the jury accepted and believed the testimony of plaintiff as to what occurred at the time of the delivery of the check, then it was, in our judgment, clearly a question for the jury to determine whether Linton had probable cause to believe plaintiff guilty of the offense charged and whether Linton did in good faith believe that there was probable cause for his prosecution.

The statute under which the prosecution was had, Comp. Laws Utah 1917, § 8347, so far as material here, reads:

"Any person who, with intent to defraud, shall make or draw or utter or deliver any check * * * upon any bank * * * knowing at the time of such making * * * that the maker or drawer has not sufficient funds in or credit with such bank * * * for the payment of such check * * * in full upon its presentation, shall be guilty of a misdemeanor."

The section further provides that the issuing and delivery of a check with such knowledge shall be prima facie evidence of intent to defraud.

The presumption or prima facie evidence of intent to defraud from the mere fact of the issuance and delivery of a check drawn upon a bank in which there is not sufficient funds deposited by the drawer for its payment, without any condition as to payment, would be overcome by an explanation or statement on the part of the drawer that there was not sufficient funds in the bank unless and until other checks which he had deposited in the bank were paid to the bank. In other words there is lack of any evidence of intent to defraud, and the presumption of such intent is overcome, where the testimony is positive that at the time of delivery the party receiving the check was advised that the drawer would not have sufficient funds in the depository unless checks theretofore deposited by the drawer were paid. Plaintiff's testimony in this case was positive that at the time of the delivery of the check to Linton he explained and stated to the latter upon what condition, and upon what condition only, would he have sufficient funds on deposit with which to pay the check which he was then delivering. Under that state of facts, it was a question for the jury to determine whether Linton in good faith believed that there was cause for the prosecution of plaintiff for a violation of the statute quoted. Linton testified that he stated to the county attorney the facts and the conversation had at the time of the delivery of the check by plaintiff to him, and that he was advised by the county attorney that there was probable cause for the arrest of plaintiff. The county attorney also testified in the case and corroborated the testimony of Linton on that point. It is not very clearly stated, however, in any of the testimony, either of Linton or of the county attorney, that the attorney was advised as to the condition upon which payment of the $119 check might not be had.

The authorities generally hold that it is a defense to an action for malicious prosecution for a defendant to show that he had fairly and fully stated all the facts out of which the

prosecution arose to a reputable attorney and had been advised by such attorney that there was probable cause to institute criminal proceedings against the complaining party. It must appear, however, without contradiction, that a full and accurate statement of all the facts was made to the attorney before the advice was given, and that the party causing the prosecution was advised that he had probable cause to initiate the prosecution and that he in good faith did believe that there was probable cause. There is some conflict in the authorities upon this particular question. Our court, however, is committed to the rule that a full and fair statement to a reputable attorney and acting upon the advice of such attorney that there was probable cause is a complete and good defense to an action for malicious prosecution, unless there is some particular evidence or circumstances or circumstance, or facts or fact, which would tend to show the defendant's disbelief in the fact that he had probable cause. *Wright* v. *Ascheim*, 5 Utah, 480, 17 P. 125; *McKenzie* v. *Canning*, 42 Utah, 529, 131 ·P. 1172. In the course of the opinion in *McKenzie* v. *Canning*, supra, it is said:

"It, however, in effect, is urged that before advice of counsel may be a defense it must appear, not only that the defendant fairly stated all the facts to counsel, and upon them was advised, but also that the defendant in good faith believed the plaintiff guilty of the charge, and that as to such fact the plaintiff was entitled to the judgment of the jury. That in some cases, dependent upon the nature of the evidence, may be true. But before the jury is justified in * * * disregarding evidence of the defendant's belief of the plaintiff's guilt, there must be some evidence, either from the nature of the evidence, calculated not to justify such a belief, or tending to show the defendant's disbelief, or other facts or circumstances to justify a fair inference of the defendant's disbelief. In other words, the jury may not arbitrarily reject the defendant's evidence showing a well-grounded belief by him of the plaintiff's guilt."

If plaintiff's testimony is to be believed, and it evidently was believed by the jury, as to what was said by plaintiff at the time of the delivery of the check, then there was evidence of a nature or character to justify the jury in finding that Linton did not in good faith believe that he had probable

cause for instituting the criminal proceedings and that he was influenced by malice in so doing. If plaintiff's testimony is true, there was not an absolute and unconditional delivery of the check. That being true, there could be no intent on the part of plaintiff, the drawer of the check, to defraud either Linton or the packing company, and any presumption of intent to defraud resulting from the mere delivery of the check would thus be rebutted.

In *McNamee* v. *Nesbitt*, 24 Nev. 400, 56 P. 37, in the course of the opinion, the court said:

"Doubtless the jury gave credit to the evidence given on the part of the plaintiff as to what the facts were. If so, they could reasonably conclude that the defendants did not state all the material facts within their knowledge to said attorneys, or, if they did, that said attorneys did not advise the prosecution of McNamee. It was for the jury to determine, from all the evidence, and the circumstances disclosed, whether or not the defendants, in good faith, laid all the facts and circumstances within their knowledge before counsel, and whether they acted in good faith on counsel's advice, if given."

From all the facts appearing in this record, we are of the opinion that the question as to whether Linton in good faith believed that there was probable cause for the prosecution of plaintff, or whether he acted maliciously in causing the prosecution of plaintiff, was for the jury.

It is further contended that as the complaint in this case charged a joint tort, and that a joint judgment was rendered against both defendants, therefore a reversal as to one necessarily works a reversal as to both defendants. At common law a joint judgment was considered an entirety and if reversed as to one judgment debtor it was reversed as to all. Such was the general rule of law in the earlier decisions in this country. The later authorities, however, do not so treat joint judgments where the facts are such that one of the joint judgment debtors is liable and the others are not when a reversal will not result in an injustice to the judgment debtor against whom the judgment is not reversed. The writer in 4 C. J., at page 1184, says:

"However, the weight of authority, especially as it appears in the later cases, some of them based on, or influenced by, statute, is that

a partial reversal as to one or more of several coparties may be had in all actions, whether sounding in tort or otherwise whenever the circumstances of the case render such action proper."

Comp. Laws Utah 1917, § 6854, provides that "judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants."
And Comp. Laws Utah 1917, § 6995, relating to appeals, provides that "the court may reverse, affirm, or modify any order or judgment appealed from." Under statutes such as the foregoing, the courts generally hold that it is within the power of an appellate court to affirm a joint judgment as to one appellant and reverse it as to another unless in so doing injustice results to the party against whom the judgment is affirmed.          **6**

In *Christopher* v. *Kelly*, 91 Mo. App. loc. cit. 100, the court said:

"It is common for judgments to be reversed as to one of the parties, or set aside for irregularities or want of jurisdiction while it is upheld as to others. The rule now established is, that a judgment against several defendants, invalid as to one or more, may be reversed as to them and affirmed as to the others. This rule has been established in deference to the principles of the Code, which has adopted the procedure in equity in this respect, and positively forbids the reversal of a judgment unless error was committed against the appellant or plaintiff in error and materially affecting the merits of the action."

The Supreme Court of Missouri, in *Freeland* v. *Williamson*, 220 Mo. 217, 119 S. W. 560, after quoting with approval the foregoing, said:

"In the very late case of *Stotler* v. *Railroad*, 200 Mo. loc. cit. 149, 98 S. W. 522, this court said: 'But, waiving the point, we consider it established on reason and authority that we may reverse as to one tort-feasor and affirm the judgment as to others. Rev. St. 1899, § 866.' "

In *Brown, etc., Lumber Co.* v. *Sessler*, 128 Tenn. 665, 163 S. W. 812, Ann. Cas. 1915C, 103, it is said:

"The technical rule of the common law invoked on the point is now quite generally held to be too artificial, and the trend of modern authority is towards the rule, as declared in this state, that reversal as to a party wrongfully adjudged liable does not require a reversal as to the party properly subjected to liability. *Sparrow* v. *Bromage*, 83 Conn. 27, 74 A. 1070, 27 L. R. A. (N. S.) 209, 19 Ann. Cas. 796,

and notes. The modern rule is obviously just, and is founded on common sense."

The third headnote to *Neenan* v. *City of St. Joseph*, 126 Mo. 89, 28 S. W. 963, is as follows:

"A judgment is not such an entirety as not to be amendable or subject to correction as to one of the parties alone, unless the substantial rights of the others would be injuriously affected thereby."

See, also, *Nashville St. Ry.* v. *Gore*, 106 Tenn. 390, 61 S. W. 777.

Defendants in this case were charged jointly as tort-feasors. The testimony, as we have pointed out, was sufficient to require the court to submit to the jury the question of the liability of Linton. The jury, by its verdict, has determined the issues in favor of plaintiff. The competent proof in the record is that Linton alone was responsible for the prosecution of plaintiff. How can it then be said that any injury or injustice would result to Linton in an affirmance of the judgment against him by reason of the fact alone that he was a joint defendant and not a sole defendant? The action is against alleged tort-feasors. Neither would have any right to contribution against the other. If it were apparent from this record that the jury was not influenced in arriving at its verdict by reason of the fact that Linton was made a codefendant with a foreign corporation, then the court, in the judgment of the writer, should not disturb the jury's verdict in the absence of some error authorizing a reversal of the judgment.

The trial court permitted incompetent testimony to be heard by the jury which tended to show that appellant corporation was responsible for the arrest and prosecution of respondent. Testimony was heard by the jury to the effect that the secretary of the corporation directed Linton to cause the arrest of respondent. In the admission of that testimony the court erred, as we have pointed out, which necessitates a reversal of the judgment as against the packing company. The packing company was the one beneficially interested in the arrest and prosecution of respondent, and not Linton, if it can be said that any one was beneficially interested in causing the arrest. As we interpret the holding of the courts, it

is to the effect that appellate courts will not affirm as to one tort-feasor and reverse as to another when the facts and circumstances made to appear in the case are such that an injustice will result to the tort-feasor against whom the judgment is affirmed. The verdict of the jury was for $7,500. It must be conceded that that verdict, in view of the facts, if not excessive, is at least a large judgment for the indignities and humiliations suffered by the respondent. He was confined in jail for a period of about three days, was promptly acquitted in the town where he had been doing business, by a jury, and it nowhere appears that his financial or social standing was injured by such arrest and prosecution. The court permitted incompetent testimony to be introduced tending to establish that the real party responsible for the arrest and prosecution of respondent was the packing company. By reason of such fact, we do not feel justified in saying that an affirmance of the judgment against Linton would not result in injustice to him. The amount of the verdict is such that we are constrained to believe that the jury were influenced in arriving at that amount by reason of the testimony tending to connect the packing company with the prosecution of respondent.

Appellate courts should not in a case of this nature, attempt to substitute their judgment as to the amount of damages respondent was entitled to recover when the case is submitted to the jury and determined upon legal evidence, and proper instructions from the court. The only power or duty of this court, in view of the record, is to reverse the case as to both defendants and direct a new trial. Such is the order. Neither party to recover costs.

THURMAN, CHERRY, and STRAUP, JJ., concur.

FRICK, J. I concur in the reversal of the judgment as against the Nuckolls Packing Company. As to defendant Linton, however, I am of the opinion that the judgment should be modified rather than reversed. As to him I am of the opinion that the amount of the judgment should be re-

duced from $7,500 to $2,000, and for that amount the judgment should be affirmed, with costs, and this litigation ended. I am also of the opinion that in view that no cause of action was established against the Nuckolls Packing Company, it should be awarded costs on appeal.