299 P.2d 622

J. Hensley COTTRELL, Plaintiff and Appellant,

v.

GRAND UNION TEA COMPANY, a corporation, and C. E. Pope, Defendants and Respondents.

No. 8396.

Supreme Court of Utah.

July 16, 1956.

Robert W. Hughes, Dwight L. King, Salt Lake City, for appellant.

A. W. Watson, Salt Lake City, for respondents.

CROCKETT, Justice.

J. Hensley Cottrell sued for malicious prosecution, arising out of a prior criminal action wherein defendants had charged him with the felony of embezzlement,[1] which was dismissed before trial upon motion of the State. A jury answered interrogatories and rendered a verdict favorable to the plaintiff. The trial court granted defendants' motion for judgment notwithstanding the verdict, from which plaintiff appeals.

The basis of the trial court's ruling, and the position defendants maintain here, is that they made a full disclosure of the facts to the prosecuting attorney, who advised the filing of the complaint, which would be a defense to this action.[2] It is an affirmative defense,[3] and the burden rested upon the defendants to establish it by a preponderance of the evidence.

The critical point of inquiry is this: Considering all of the evidence, could reasonable minds fairly say that they were not convinced by a preponderance of the evidence that the defendants made a full and truthful disclosure of the material facts to the county attorney?

Plaintiff Cottrell worked as a salesman on commission for the defendant Tea Company, and the defendant Pope was its manager. There was a shortage in money plaintiff turned in to the defendant company. A Mr. Bernard W. Fives, agent for defendants' bonding company, was called in and conducted an investigation of Mr. Cottrell's account. There was disagreement as to the amount owing: Mr. Cottrell thought it was only a net of a few dollars (about $16), whereas, Mr. Fives insisted that it was considerably more (something over $100). Mr. Fives went to the Cottrell home to go over the matter. The latter requested that an opportunity be given to go over the accounts with his wife, who is an accountant, and who was not at home at the time. This opportunity was not af-

1. Sections 76–17–1, 76–17–11, U.C.A.1953 (felony if over $50).
2. Uhr v. Eaton, 95 Utah 309, 80 P.2d 925; Thomas v. Frost, 83 Utah 207, 27 P.2d 459; Sweatman v. Linton, 66 Utah 208, 241 P. 309; McKenzie v. Canning, 42 Utah 529, 131 P. 1172.
3. Lowther v. Metzker, 69 Idaho 115, 203 P.2d 604.

forded. In the conversation it was stated that Mr. Fives spent a good deal of his time "nailing employees of the company [defendant Tea Company] to the wall." And he told the plaintiff, "Mr. Cottrell, they are going to make an example of you." Thereafter, Mr. Pope and Mr. Fives discussed the matter with the company attorney, who gave them a so-called, "letter of probable cause" and they went to the county attorney's office, presented the matter to Mr. Hal Taylor, Deputy County Attorney, pursuant to which the complaint charging plaintiff with a felony was issued.

The defendants' contention that they made a full and truthful disclosure of facts to Mr. Taylor rests upon the foundation of the testimony of Mr. Pope and Mr. Fives, which Mr. Taylor corroborates in some particulars. Under the facts here, it seems meaningless for defendants to prate that there is "no evidence to dispute" their claims as to what they did. It is appreciated that under usual circumstances, uncontroverted testimony of credible witnesses may not arbitrarily be disregarded by the trier of the facts.[4] But there are cogent reasons why such rule is not applicable here.

In approaching a realistic analysis of the present situation, it is of prime significance that the occurrences upon which the claimed full disclosure is based took place outside the plaintiff's presence, and furthermore, were carried on and are now testified to by witnesses whose interests are adverse to him. Under such circumstances it would be contrary to reason and justice to foreclose plaintiff from disputing their version of what happened on the ground that their evidence was "undisputed." At the disadvantage of being absent when the events took place, the only course open to plaintiff was to expose weaknesses in their story by cross examination or contrary evidence to show uncertainties, inconsistencies or other circumstances which would cast doubt upon the truthfulness of their declarations and support his contention that the prosecution was motivated by personal animus and vindictiveness, rather than legal justification. The inquiry to be pursued, is whether under the evidence, plaintiff succeeded in casting sufficient doubt upon the defendants' story that reasonable minds could fairly reject it.

The testimony of Mr. Pope and Mr. Fives upon which the defense of full disclosure is primarily based is obviously suffused with a high degree of self-interest. And further, from the dispute which developed over the account, and the fact that

4. E. g., Leavitt v. Thurston, 38 Utah 351, 113 P. 77; Karren v. Blair, 63 Utah 344, 225 P. 1094. Compare: Kent v. Ogden L. & I. Ry. Co., 50 Utah 328, 167 P.

666 (Plaintiff held bound by uncontradicted testimony of witnesses introduced by him).

Mr. Cottrell was leaving the company and was prosecuted criminally, it would not be going too far to say that an inference of animus could fairly be drawn. Self-interest is uniformly recognized as a factor which may be considered in evaluating or in discounting testimony,[5] and it is not limited to a direct pecuniary stake in the result. The interest which one may have in vindicating his own conduct is also an important factor.[6] Such interest may well have an important bearing, subconsciously as well as consciously, upon both memory and testimony. Each of the witnesses relied upon by the defendants have such motivation.

The only one of plaintiff's witnesses for whom they can claim any degree of detachment is Mr. Taylor, the Deputy County Attorney. It is to be noted that he was indefinite in his recollections both as to the time certain disclosures were made to him and as to what they were. In fact, one aspect of his testimony, much less than demonstrating that full disclosure had been made to him, indicates to the contrary as shown by his answers to the following questions put by defendants' own counsel:

"Q. Did they inform you he was to turn in to them, the actual cash he collected on the route, less those deductions? A. Yes.

*   *   *   *   *   *

"Q. Mr. Taylor, if Mr. Pope had told you that the cash was not turned in, but the cash was deposited in the bank account of the salesman, then a check drawn for the difference between the amounts, as shown on the yellow sheet, to be credited to his account, and the amount he owed Grand Union, would that fact have had a bearing on your decision?

*   *   *   *   *   *

"A. I would think it would.

"Q. They never did tell you that?

"A. I don't recall that they did. I don't recall one way or the other."

The evidence shows that it was in fact the practice for salesmen to collect money on their routes, from which they were permitted to deduct items of expense, including the amount they had earned as salary from the company as shown by a voucher (yellow sheet) the company furnished them, and remit the remainder to the company. They deposited funds in their own bank accounts and remitted to the company by check. This was the procedure followed by Mr. Cottrell. It was also shown that on prior occasions he had remitted checks for different amounts than the exact figure owing to the company,

---

5. That fact trier may discount testimony of self-interested witness see McGowan v. Denver & R. G. W. R. R. Co., Utah, 244 P.2d 628; Patterson v. Blair, Utah, 257 P.2d 944; Nichol v. Wall, Utah, 253 P.2d 355.

6. In re Richards' Estate, 5 Utah 2d 106, 297 P.2d 542.

and that the company had made no objection to this procedure.

It seems clear that under the plan of operation actually followed, so long as the company received what it had coming, it was not concerned with the identity of the money, and that the salesman was thus the debtor and the company the creditor, nothing more. Under the relationship of debtor and creditor, rather than agent and principal, in which the agent is in possession of particular funds belonging to the principal, embezzlement would not lie.[7] The money in question would not be "the property of another" within the meaning of our statute.[8] Therefore, Mr. Taylor's statement is most certainly true that it would make a difference if the particular money collected was not required to be turned in, but that the employee could make deductions, place the money in his bank account and remit by check.

Another important facet of the entire picture is that considerable uncertainty exists as to what happened on and before December 7th, the day the complaint was issued, in regard to advising Mr. Taylor. This is emphasized by the fact that respective counsel on this appeal are at variance with each other as to what the record shows had been done on and prior to that occasion. Upon the basis of the record it seems that the dispute is not without some justification. Mr. Fives, who was present in Mr. Taylor's office when this matter was first discussed with him, said that Mr. Pope then had in his possession a letter written by Mr. Watson, defendants' attorney, expressing belief that a crime had been committed, which was presented to Mr. Taylor. (It is significant that in this letter Mr. Watson recited that he did not have a copy of the contract of employment.) Mr. Taylor says that he did not see the letter on that occasion but that it was presented to him on the second visit by Mr. Pope. It is unquestioned that Mr. Pope was to return after December 7th, the day the complaint was issued. This was certainly for some purpose, the obvious one being to furnish further facts to Mr. Taylor.

Defendants' witnesses themselves disagree as to the time of the second visit just alluded to. Mr. Pope testified that there were only four or five days between the visits; while Mr. Taylor said that it was his recollection that it was two or three weeks. From the foregoing uncertainties the jury could reasonably entertain doubts at to when the important documents, the "agreement of employment" and the so-called "employees cash bond" were actually presented to Mr. Taylor. It also seems highly significant that neither in

7. State v. White, 46 Idaho 124, 266 P. 415; State v. Clayton, 80 Utah 557, 15 P.2d 1057.

8. Section 76–17–7, U.C.A.1953.

Attorney Watson's letter, nor in the direct testimony of any of the defendants' witnesses, including Mr. Taylor, was any reference made to the fact that Mr. Cottrell had on deposit $80 in cash, which, under his agreement, the company was authorized to credit to his account to cover any shortages therein. Even taking the company's figures, this would have reduced the net amount he owed to less than $50, the minimum amount required to make out a felony in embezzlement.

From the foregoing facts, one does not wonder that the jury was not convinced that Mr. Taylor was given to understand the method of operation between the parties. This should have been made clear to him by Mr. Fives and Mr. Pope, who were seeking the prosecution. They were businessmen, who either were, or should have been, entirely familiar with the facts and circumstances, and should have been acting with caution and circumspection in regard to a matter so serious as charging the plaintiff with a felony. From the dealings of these parties as disclosed by the evidence the conclusion is not at all unreasonable that the company was simply using the pressure of potential criminal prosecution to enforce its demands against Mr. Cottrell, which is expressly denounced by our statute.[9]

This case having been tried to a jury, they were the exclusive judges of the evidence and of the inferences to be drawn therefrom. It was not the privilege of the court to disagree with and overrule their action unless the evidence so unerringly pointed to a contrary conclusion that there existed no reasonable basis for the jury's finding. This court has many times affirmed commitment to a policy of reluctance to interfere with findings of fact and verdicts rendered by juries, and has declared that is should be done only when the matter is so clear as to be free from doubt.[10] In Butz v. Union Pac. R. R.[11] we quoted with approval the language of Justice Murphy, speaking for the United States Supreme Court with respect to trial by jury: " ' * * * A right so fundamental and sacred to the citizen, whether guaranteed by the Constitution or provided by statute, should be jealously guarded by the courts.' " Again in Stickle v. Union Pac. R. R. Co.,[12] we stated " * * * we remain cognizant of the vital importance of the privilege of trial by jury in our system of justice and deem it our duty to zealously protect and preserve it."

Upon the basis of the self-interest of the defendant's witnesses and the uncertainties and other unsatisfactory aspects

9. Section 76–19–2, U.C.A.1953.
10. Stickle v. Union Pac. R. R. Co., Utah, 251 P.2d 867, 871; Newton v. Oregon Short Line R. R. Co., 43 Utah 219, 134 P. 567.
11. 120 Utah 185, 233 P.2d 332, 337.
12. See footnote 10, supra.

of their evidence, hereinabove discussed, there is ample basis upon which the jury, acting fairly and reasonably, could refuse to believe and find that there had been a full, fair and truthful disclosure of all of the material facts to Mr. Taylor. Therefore, the trial court should not have in effect overruled their determination and substituted his own conclusion that such full disclosure had been established as a matter of law.

The case is remanded with instructions to reinstate the verdict of the jury in favor of the plaintiff and to enter judgment thereon. Costs to appellant.

Roger I. McDONOUGH, C. J., and Lester A. WADE, J., concur.

WORTHEN, J., concurs in result.

HENRIOD, Justice (dissenting).

I dissent. Mr. Justice CROCKETT makes much of the facts that incidents testified to relating to disclosure were incidents occurring outside plaintiff's presence, and were testified to by witnesses whose interests were adverse to plaintiff, and whose testimony was "obviously suffused with a high degree of self-interest", implying that we should not lend too much credence to such evidence, *though undisputed*. It is highly unlikely that the complaining witnesses would take the accused along with them to see the County Attorney, and it is equally improbable that such complainants would not have interests adverse to plaintiff's, but there is nothing in the record indicating that complainants prostituted themselves by testimony "obviously suffused with a high degree of self-interest." The same self-interest about which the main opinion speaks as being a factor in evaluating or discounting testimony, well may have been the factor in this case that led the jury to hold against defendants irrespective of any question of full disclosure. Dislike for defendants may have had something to do with it too.

The only pertinent question here is whether, before signing a complaint against the plaintiff for embezzlement, respondents made a full disclosure of material facts in their possession, to a deputy County Attorney, who, after filing the complaint, moved its dismissal which was granted.

I am convinced that the trial court did not err in its conclusion that there was no evidence that respondents had not made a full disclosure, since plaintiff adduced no evidence to controvert the testimony of both the deputy County Attorney and the respondents that the two key exhibits, a contract and a bond, were deposited with the County Attorney prior to his filing of the complaint. No one denied that such documents were in the hands of the County Attorney before he filed the complaint. It is impossible to determine how the jury, on special verdicts, found otherwise, except

possibly by mistake, since the written verdict indicates that in answering "yes" to the question, "Do you find from the preponderance of the evidence that the defendants prior to the issuance of the criminal complaint * * * failed to disclose to Mr. Taylor the following: (a) the contents of Exhibit 1 (contract). Answer "yes" or "no." (b) * * * (c) * * * (d) The contents of Exhibit 4 (bond). Answer "yes" or "no," the jury had written in "no" and had thereafter drawn lines through the "no" and substituted "yes." The jury made changes from "no" to "yes" and from "yes" to "no" in six out of eight of the lettered subdivisions relating to exhibits referred to in the interrogatory. (Parentheses supplied).

Nor can I see how the jury possibly could have answered "yes" to the question: "Do you find * * * that the defendants failed to furnish or produce *any information or documents* requested by Mr. Taylor * * *," when the only evidence in this case having to do with such a question was the testimony of Mr. Taylor that he *did* request information and the documents in question, and that everything he requested was furnished before the complaint was filed, together with the testimony of Mr. Pope that he *did* supply the documents before the complaint was filed.

The only peg upon which the main opinion can attempt to hang its hat is Mr. Taylor's answer to a question to the effect that if he had been advised that plaintiff could have put the money in his own bank account and checked it to the company, would such information have made any difference. Mr. Taylor said he thought it would have made a difference. Difficulty with the main opinion's treatment of that testimony is that it assumes a fact not shown in the record,—that the plaintiff *paid* the difference to the company by check. The record shows he did no such thing, but that he failed to pay the company by check or otherwise. Of course Mr. Taylor was not only correct but quite judicious in pointing out by necessary implication in his answer, that had payment been made there could have been no basis for the issuance of a complaint. The question and answer may have shown a failure to disclose a *custom of payment,* but it did not show a failure to disclose the material fact of *lack of actual payment.* Facts already had been disclosed showing that such custom of payment had not been followed, since plaintiff had not written a check and paid the company, and in failing to follow any custom of payment, whether by check or cash, and his having kept the money certainly gave reasonable cause to believe he had converted the company's cash. Hence, it appears that the question and answer, at best, could have been interpreted as showing a failure to disclose

something that was quite immaterial and of no importance where evidence had been produced of an actual conversion of the funds. Irrespective of talk about practices of the salesmen, the money was not paid over. The question and answer reflected no failure to disclose pertinent facts, and there is nothing else in the record that would point to any such failure.

The main opinion's fashioning of a debtor-creditor relationship from the facts here seems to strain factors pointing to a principal-agent relationship to arrive unwarrantedly at a different relation, and hardly squares with the reasoning in our recent case of Salt Lake Transp. Co. v. Board of Review, 5 Utah 2d 87, 296 P.2d 983.

The discussion as to how many times complainants saw Taylor and disagreement as to dates seems unimportant since *everyone,* including the County Attorney, agrees that all documents requested and necessary were supplied before complaint issued.

I subscribe to the complimentary generalization about the jury system, but point out that the "right so fundamental and sacred" which "should be jealously guarded by the courts," should not be made an instrument for abuse because of those high-sounding phrases. The *other* citizen has rights too, which is also a "right so fundamental and sacred" that also "should be jealously guarded by the courts,"—the right to expect that a court will dispossess a jury that has gone haywire,—as the trial court in this case, in my opinion, quite properly did.