## STICKLE v. UNION PACIFIC R. CO.

No. 7831.  Decided December 23, 1952.  (251 P. 2d 867.)

478

See 75 C. J. S., sec. 976. Contributory negligence in connection with injuries arising from unloading freight. 38 Am. Jur., Negligence, sec. 199; 106 A. L. R. 1140.

*Rawlings, Wallace, Black, Roberts & Black* and *Richard C. Dibblee*, all of Salt Lake City, for appellant.

*M. J. Bronson, Bryan P. Leverich, A. U. Miner* and *Howard F. Coray*, Salt Lake City, *D. A. Alsup*, Ogden, *Marvin J. Bertoch*, Salt Lake City, for respondent.

CROCKETT, Justice.

Plaintiff Russell S. Stickle was injured by falling from a tank while helping to unload it from one of defendant's flat cars. He claims this was caused by defendant's negligence in delivering the tank with a defect in one of the strap iron tie bands holding it to the flat car.

Mr. Stickle was an employe of the consignee, was not engaged in interstate commerce so the Federal Employers' Liability Act, 45 U. S. C. A. § 51 et seq., does not apply, and contributory negligence would be a complete bar to his recovery.[1] After the evidence had been

[1] *Oswald* v. *Utah Light & Ry. Co.*, 39 Utah 245, 117 P. 46; *Raymond* v. *Union Pac. R. Co.*, 113 Utah 26, 191 P. 2d 137.

presented, the trial court granted defendant's motion
for a dismissal on the ground that the plaintiff was himself
guilty of negligence proximately contributing to cause his
own injury because he failed to discover the defect in the
tie band.

The flat car was loaded with two cylindrical steel tanks,
each about 12 feet in diameter by 20 feet in length. Laid
end to end they occupied practically the entire length of
the car. Each tank was steadied by wooden timbers (cradles) lying alongside of it on the car and was held down by
two tie bands, one about four feet from each end of the
tank. These bands were of strap metal three to four inches
wide and approximately ⅛ inch thick. They went up over
the top of the tank and the ends were looped through stake
pockets at the edge of the flat car.

Defendant as delivering carrier owed a duty to the consignee and its employe Stickle to make a reasonable inspection of the car and its load for the purpose of discovering any defects therein,[2] and upon discovery of
any defect which it might reasonably believe would
render the car unsafe for handling or unloading it would
be obliged to repair the defect or give notice thereof to
the consignee.[3]

Upon arrival, this duty of inspection was performed by
George F. Cutler, the defendant's head car inspector at
Pocatello. He discovered that one of the tie bands was
almost (within ¼ of an inch) broken through. He testified
that he made out a "bad order" on the car specifying the
defect as "broken tie band" and stapled it to the side of the
car with an automatic stapling hammer. He also stated
that ordinarily a car with such a defect would be sent to
the rip track for repair before being transported further.

[2]*Raymond* v. *Union Pac. R. Co.*, supra; *Folsom* v. *Lowden*, 157 Kan.
328, 139 P. 2d 822.
[3]*Erie R. Co.* v. *Murphy*, 6 Cir., 108 F. 2d 817, 126 A. L. R. 1093,
and numerous authorities therein cited.

This was not done, but the car was sent to the consignee for unloading.

Such cars are unloaded by the use of a crane. Cables are slipped around the tank, the crane hooks on, lifts it off and lays it on timbers or cribbing alongside the tracks. Plaintiff and his foreman, Donald Evans, both testified that they worked about the car preparing cribbing, moving up the crane, and doing other work preliminary to unloading for 30 minutes to an hour before the incident occurred; that they did not see any "bad order" card or other warning sign of defect on the car nor the broken tie band; that they were familiar with "bad order" cards and if they had seen one would not have proceeded to unload a car so marked until they had made a check and ascertained whether it was safe to do so.

It was plaintiff's duty to get up on top of the tank to connect the cables to the crane. This could be done in one of two ways, either by being pulled up and placed there by the crane or, as he said was customary, by using one of the tie bands to climb up the side. He chose to do the latter. He cut the bottom of tie band loose on the east side of the car, tried it by pulling his weight to make sure it would hold him, then proceeded to climb up and was almost on top when the strap broke and came down with him as he fell to the ground, fracturing bones in his ankles and legs causing the injuries of which he complains.

An examination of the tie band where it broke showed a bright, clean break of about ¼ of an inch and the rest of the break was weathered, corroded and rusted, indicating that that portion had been broken through for some period of time. Plaintiff's witnesses testified that this prior partial break was of such a nature that it would not ordinarily be noticed unless one was looking for it.

The trial judge appears to have assumed that the plaintiff made a sufficient case to go to the jury on the question of negligence of the railroad. He stated:

"Now of course, the railroad, they can't anticipate every use that a person will make of their facilities, such as a strap  *  *  *  and they can't be charged with knowledge that somebody may use it as a trapeze or a swing or as a ladder to climb up the tank.

"Now the plaintiff seeks to overcome that by *showing that the usual custom and practice in* unloading cars *was for men to do that* and therefore the railroad was charged with the knowledge that that might be done, but *from that standpoint the case might be submitted to a jury* and they might conclude that the railroad didn't exercise all of the care that was necessary to protect the plaintiff in that regard." (Emphasis added.)

In that regard the trial judge was correct. The purpose of these tie bands was to secure the tanks and to keep the load stabilized and safe. The question whether defendant's reasonable inspection would have required it to discover the defect is eliminated from the case by the fact that its inspector did in fact discover it.

But the inquiry of moment is whether, after discovering the defect, the defendant discharged its duty to use reasonable care for the safety of the consignee and its employees.

Defendant's inspector Cutler, called as its own witness, testified that the car should have been sent to the rip track for repairs or a "bad order," attached to the car as a warning. True, he said the latter was done, but the jury could have found to the contrary because this was disputed by the statements of the plaintiff and the foreman that, although they worked around the car for more than a half hour (plaintiff said he was on both sides of the car) before the plaintiff was hurt, they saw no such card on it. Therefore, as the trial court correctly opined, there was a jury question as to whether defendant was negligent in failing to deliver this car in a reasonably safe condition for unloading or in notifying the consignee of the defect.

The main contention made by the defendant and the one on which the trial judge seems to have granted the dismissal is that of contributory negligence. He stated:

"* * * but the hurdle that I believe plaintiff cannot overcome is the doctrine in law that we call contributory negligence."

Contributory negligence is an affirmative defense and the burden rests upon the defendant to prove it by preponderance of the evidence.[4]

The authorities frequently state that the question of contributory negligence is usually for the jury.[5] And that this is so wherever the evidence is such that reasonable minds may differ as to its existence has been stated innumerable times,[6] which is undoubtedly correct. However, in view of the fact that before the issue may be taken from the jury, the defendant has the burden of establishing plaintiff's negligence by a preponderance of the evidence it may be a bit more precise to state that the question of contributory negligence is for the jury whenever the evidence is such that jurors, acting fairly and reasonably, may say that they are not convinced by a preponderance of the evidence that the plaintiff was guilty of negligence which proximately contributed to cause his own injury.

It should be kept in mind that so far as the quantum of proof necessary to take the question of contributory negligence from the jury is concerned, the tests are the same as with respect to primary negligence. For instance, in a given case, there may be *some* evidence upon which a finding of negligence by the defendant *could*

[4]*Miller* v. *Southern Pac. Co.*, 82 Utah 46, 21 P. 2d 865; see *Baker* v. *Decker*, 117 Utah 15, 212 P. 2d 679.

[5]*Malizia* v. *Oregon Short Line R. Co.*, 53 Utah 122, 178 P. 756; *Newton* v. *Oregon Short Line R. Co.*, 43 Utah 219, 134 P. 567, 570.

[6]See *Shortino* v. *Salt Lake & U. R. Co.*, 52 Utah 476, 174 P. 860; *Earle* v. *Salt Lake & Utah R. Corp.*, 109 Utah 111, 165 P. 2d 877.

be based, yet the jury may remain in such a state of mind that they may fairly say that they are not convinced by preponderance of the evidence that the defendant was negligent, and based upon such failure of proof may refuse to find a verdict against him. It would only be when the defendant's negligence had been established with such certainty that all reasonable men must conclude that he did not exercise reasonable care, that the court would rule as a matter of law that he was negligent and direct the jury to find a verdict against him; conversely, if evidence were such that reasonable men may fairly say that they are not convinced from a preponderance of the evidence that he was guilty of negligence, the court could not rule that he was negligent as a matter of law and take the case from the jury.[7]

These principles apply in identical fashion to the question of plaintiff's contributory negligence except that the defendant has the burden of proof. That the evidence is such that the jury *may* find from a preponderance of the evidence that the plaintiff failed to use due care for his own safety is not sufficient. The proof must establish his failure to do so with such certainty that all reasonable minds must so conclude before the court may rule as a matter of law that he is precluded from recovery on that ground. The court should exercise caution and forbearance in considering taking questions of fact from the jury.

In our democratic system, the people are the repository of power whence the law is derived; from its initiation and creation to its final application and enforcement, the law is the expression of their will. The functioning of a cross-section of the citizenry as a jury is the method by which the people express this will in the application of law to

[7]*Seybold* v. *Union Pac. R. Co.*, 121 Utah 61, 239 P. 2d 174; *Toomer's Estate* v. *Union Pac. R. Co.*, 121 Utah 37, 239 P. 2d 163.

controversies which arise under it. Both our constitutional[8] and statutory[9] provisions assure trial by jury to citizens of this state.

Courts, as final arbiters of law, could arrogate to themselves arbitrary and dangerous powers by presuming to determine questions of fact which litigants have a right to have passed upon by juries. Part of the merit of the jury system is its safeguarding against such arbitrary power in the courts. To the great credit of the courts of this country, they have been extremely reluctant to infringe upon this right, and by leaving it unimpaired have kept the administration of justice close to the people.[10] Of course, the rights of litigants should not be surrendered to the arbitrary will of juries without regard to whether there is a violation of legal rights as a basis for recovery.[11] The court does have a duty and a responsibility of supervisory control over the action of juries which is just as essential to the proper administration of justice as the function of the jury itself. Nevertheless, we remain cognizant of the vital importance of the privilege of trial by jury in our system of justice and deem it our duty to zealously protect and preserve it.

A very fine statement of the proper attitude toward this right was expressed for this court by the late Mr. Justice Frick in *Newton* v. *Oregon Short Line R. Co.*,[12] where, in referring to the question of submitting plaintiff's contributory negligence to a jury, he made these statements:

"The court can pass upon the question of negligence only in clear cases.

[8]Constitution of Utah, Article 1, Sec. 10.

[9]104-23-5, U. C. A. 1943; U. R. C. P., Rule 38.

[10]See *Butz* v. *Union Pac. R. Co.*, 120 Utah 185, 233 P. 2d 332, and authorities therein cited.

[11]See statement of Mr. Chief Justice Wolfe in *Raymond* v. *Union Pac. R. Co.*, 113 Utah 26, 191 P. 2d 137.

[12]See footnote 5.

\* \* \* \* \*

"\* \* \* unless the question of negligence is free from doubt, the court cannot pass upon it as a question of law; \* \* \* if \* \* \* the court is in doubt whether reasonable men, \* \* \* might arrive at different conclusions, then this very doubt determines the question to be one of fact for the jury and not one of law for the court."

Reverting then to the inquiry pertinent here: Taking the evidence and the fair inferences therefrom in the light most favorable to the plaintiff, could reasonable minds remain in such a state that they could fairly say that they were not convinced by a preponderance of the evidence that he failed to use due care for his own safety.

In analyzing the evidence to answer this, there are four points which give support to plaintiff's contention: (a) Plaintiff did not have the primary duty to inspect the car and its load; this was the duty of, and was properly done by, defendant's inspector Cutler. The only thing required of plaintiff was that he use ordinary care and make reasonable observation for his own safety; (b) unless in doing so he saw something to warn him to the contrary, he could assume that the car and its load was in a reasonably safe condition for transportation and unloading, which would include the fact that the tie band was not defective; (c) the tie band, as observed on the east side where plaintiff was, appeared to be all right; he could place some degree of reliance on such appearance and the fact that the band would not normally be nearly broken through as this one was; and (d) further, he testified that he did make a test by pulling his weight on the band and it held him.

The only further thing he could have done was to walk around to the other side of the car for the express purpose of inspecting this tie band. Even then, according to the testimony, this break was such that he may not have observed it unless he had been looking for it. To require him to make such an inspection as would have revealed this defect to him may have required an extraordinary degree

of care if not actual prescience as to the nature and location of the difficulty.

It appears to us that under the circumstances here shown, taking into consideration factors (a), (b), (c), and (d) as just set out, reasonable men could well believe that the precaution plaintiff did take was sufficient to meet the test of ordinary, reasonable care for his own safety. Or more accurately, that reasonable minds could fairly say that they were not convinced by a preponderance of the evidence that he failed to use such degree of care. Accordingly, the question of his contributory negligence should have been submitted to the jury.

Judgment reversed. Costs to appellant.

WADE, McDONOUGH and HENRIOD, JJ., concur.

WOLFE, C. J., concurs in the result.