PATTERSON et al.v. BLAIR et ux.

No. 7948.   Decided June 3, 1953.   (257 P. 2d 944.)

See 12 C. J. S., Brokers, sec. 93.

*Claude T. Barnes,* Salt Lake City, for appellants.

*Allen L. Hodgson, Payson,* for respondents.

CROCKETT, Justice.

The problem with which we are here concerned is the meaning to be given the term "offered for sale" as it is used in a certain real estate listing contract.

Defendants Blair signed an agreement listing their farm near Payson, Utah for sale with plaintiffs, real estate brokers. It gave the latter exclusive right to sell the property for six months and provided that if Blairs sold it within 12 months after that time "to any person to whom * * * [plaintiffs] have previously offered it," defendants were to pay a commission.

There was no sale during the listing period, but within twelve months after it expired Blairs sold the property to a Mr. Paul Hurst. Plaintiffs claimed that they had "offered" the Blair property to Hurst during the listing time and demanded that the Blairs pay commission on the sale. They refused, wherefore this suit. A jury returned a verdict for the defendants.

Plaintiffs appeal asserting that the evidence compels a finding that they had offered the property to Hurst during the time specified. The undisputed evidence upon which the plaintiff bases this contention is briefly:

That during the listing period, George T. Eckersley, an agent for plaintiffs, was attempting to sell or trade Mr. Paul Hurst's store and to get Hurst a ranch; he took Hurst to various places including Montana and Wyoming to show him such properties; there was conversation between the

two concerning the Blair property which in the main is reflected by the following excerpts from Hurst's testimony:

"Q. * * * Now when Mr. Eckersley took you to the Blair place and told you that he had that place for sale * * *? A. He didn't take me to the Blair place, he was just riding by * * *"

*       *       *       *       *

"A. We were riding along the road, and Mr. Eckersley said, 'I have got to go in and see this man a minute about his place.' We just rode in the lane * * * and he talked to him.

"Q. Did Mr. Eckersley say anything about the place being for sale? A. He said 'This place is for sale,' yes.

"Q. Did he say anything else about the place? A. He said, 'I don't believe you want this place. It is a man-killer.' He said, 'It is killing Mr. Blair.'

"Q. Did he say anything more about the place? A. That is all that was said, as I remember."

In addition to the foregoing uncontroverted facts, it should be said that there was also testimony from plaintiffs' agent Eckersley that in a conversation with Hurst in the latter's store regarding various properties plaintiffs had listed for sale, he mentioned the Blair ■ farm as one of them; that values were discussed and that Hurst "intimated" that if Eckersley could sell the store he would be interested in buying the Blair place or some other property. Eckersley was an interested witness and it was the jury's privilege to determine what credit and effect they would give to his testimony just recited.[1]

Concerning Eckersley's activities in regard to sale of the farm, about all that can be made out from undisputed evidence is that he casually, and one might almost say inadvertently, let Hurst know that the property was for sale and that if he wanted to buy it Eckersley would be willing to sell it to him.

---

[1]See *Jones* v. *California Packing Corp.*, 121 Utah 612, 244 P. 2d 640; and authorities therein cited; *Kelly* v. *Jones*, 290 Ill. 375, 125 N. E. 334, 8 A. L. R. 796; 32 C. J. S., Evidence, § 1038, page 1089; 20 Am. Jur. 1031.

Plaintiffs' counsel has devised some ingenious arguments that Eckersley's conduct actually amounted to an offer to sell the place. He suggests that in telling Hurst "I don't believe you want this place. It is a man-killer * * * It is killing Mr. Blair * * *" he was using a bit of subtle sales psychology—presenting the place as a challenge to Mr. Hurst's feeling that he was superior and could overcome such difficulties. Admittedly, this is at least a possibility. However it does not exactly comport with plaintiffs' evidence as to the effort and expense they go to to please prospective purchasers and to point out all the favorable aspects of properties they are trying to sell.

Hurst did live in the locality and had a general knowledge concerning the place, but it is undisputed that he was never shown the Blair farm by plaintiffs or Eckersley; that he was never informed what the asking price was nor anything concerning the livestock or equipment, and that he did not know nor was he told by Eckersley just how many acres it caintained or anything definite about its water rights.

We are entirely in accord with the thought that collusion to cheat one out of just compensation for honest effort is reprehensible and to be frowned on by the law and those charged with the responsibility of administering it. Nor is there any discord with the idea that real estate brokers are engaged in an honorable calling, rendering useful service in getting buyers and sellers of property together. The fact they do not buy the property, take it into a store or sales floor to display and sell it does not render their efforts less valuable and essential than those of other sales merchants. Such service is "worthy of its hire." It is duly licensed and entitled to all reasonable safeguards. On the other hand, although the clause with which we are concerned is perfectly valid and to be invoked for the broker's protection in a proper case, it surely was not intended to benefit a real estate man who has done nothing, by conferring upon him a "windfall" commission because he casually or inadvertently mentioned the listing

to someone who thereafter happened to purchase it in the normal course of affairs and quite independent of the broker's activities. If so, he might well content himself with letting everyone possible know of a listing in the hope that some such eventuality would inure to his benefit, instead of really working on selling the property.

Whether what Eckersley did amounts to an "offering for sale" as that term was used in the contract depends somewhat upon the meaning to be given to the term "offer." It is undoubtedly difficult and perhaps impossible to reduce the word "offer," by itself, to any absolute ■ and precise meaning which would be of universal application under all fact situations. Words are at best imperfect and only approximate conveyors of thought; they are necessarily to be construed in the frame of reference in which used. The word "offer" in a legal sense is often used to signify a formal proposal to enter into a legal contract. It seems unlikely, and defendants do not even contend, that the parties intended such requirement here. Eckersley's activities fell far short of it.

The court in formulating its instructions to the jury as to what constituted an offer as a matter of law could take into consideration the facts and circumstances surrounding the transaction as indicating what the parties intended by the term. It is apparent that ■ the purpose of including the clause in the contract was to protect a real estate man who had expended time, effort and/or money in attempting to sell property, from being cheated out of his commission by a prospect who would wait until after the listing period had expired to buy it.

In the light of that purpose, the trial court was justified in interpreting the clause under discussion to require some affirmative offer to sell, or activity toward developing the sale, such as solicitation, showing or attempted persuasion to buy. This issue was squarely presented to

the jury. The court instructed them:

"* * * the question is whether or not under the terms of * * * [the] listing agreement, the plaintiffs offered the property for sale to Mr. Hurst",

and further told them in substance that to "offer" means "to hold out," "to tender," or "to present" for sale, and advised them that if plaintiffs had so offered the property to Hurst, plaintiffs should recover. We see no error in such instructions and no exception was taken to them.

We are not confronted with the question whether the proof supports a *finding* that plaintiffs *did not* offer the property for sale, but rather, does the evidence compel a finding that such offer was made? The burden of proof was upon the plaintiffs. Even if there were ■ some evidence upon which such a finding could rest, or if the evidence were equally balanced on the issue, yet the jury could be in such a state of mind that they were not convinced by a preponderance of the evidence that the plaintiffs' activities amounted to an offer of sale to Hurst.

The things Eckersley did are equivocal: there was nothing particularly significant or unusual about his actions relating to the Blair place which could not logically and reasonably be regarded as mere casual occurrences while trying to sell Hurst other properties; they ■ do not necessarily indicate that he was actually doing anything purposed towards selling the Blair property to him. That being so, the determination of the fact lay within the province of the jury. If reasonable minds acting fairly and honestly could remain unconvinced that an offer of sale was made, the verdict must not be disturbed.[2] Such is the case here by reason of the fact it cannot be said that the only reasonable conclusion to be drawn was that Eckersley offered the property for sale to Hurst.

[2]*Stickle* v. *Union Pacific R. Co.*, 122 Utah 477, 251 P. 2d 867.

Judgment affirmed. Costs to respondents.

McDONOUGH, HENRIOD and WADE, JJ., concur.

WOLFE, Chief Justice.

I concur in the result. It should be noted that the plaintiffs, who are the appellants did not offer any evidence as to what the parties meant by the word "offered" as used in the listing agreement and that the plaintiffs do not claim that it was the function of the jury and not the court to determine what the parties meant by the word "offered." The court instructed the jury as to the meaning of the word "offered" and no exception having been taken to that instruction by the plaintiffs, the definition given by the court is the "law of the case". Thus it is immaterial what meaning we think should be ascribed to the word or whether the trial court's definition was correct.

We have before us for decision, therefore, only the narrow question whether the evidence compels a finding that the plaintiffs through their agent, Eckersley, "offered" the property to Hurst during the listing period, as that word is defined in the instructions. I conclude that the evidence does not compel that finding.