372 P.2d 3

**Claude DENNIS, Plaintiff and Respondent**

v.

**The DENVER AND RIO GRANDE WESTERN RAILROAD COMPANY, a corporation, Defendant and Appellant.**

No. 9543.

Supreme Court of Utah.

May 29, 1962.

---

3. Romney v. Covey Garage, 100 Utah 167, 111 P.2d 545; Wyatt v. Baughman, 121 Utah 98, 239 P.2d 193.

Van Cott, Bagley, Cornwall & McCarthy, Grant Macfarlane, Jr., Clifford L. Ashton, Salt Lake City, for appellant.

Rawlings, Wallace, Roberts & Black, Salt Lake City, for respondent.

CROCKETT, Justice.

Defendant railroad appeals from a jury award in favor of plaintiff, an employee, who lost two fingers on his left hand as a result of frostbite while repairing track.

The case is grounded in the Federal Employers' Liability Act,[1] which allows re-

1. 45 U.S.C.A. § 51 et seq.

covery for negligence of the employer even if the employee is contributorily negligent, requiring that the total award be diminished by the proportion his negligence bears to the whole. The jury awarded $20,000 damages and deducted one-half thereof for the plaintiff's negligence, leaving a net award of $10,000.

The essence of the railroad's appeal is that the evidence fails to show that it was guilty of any negligence, or that by any such conduct it contributed to cause plaintiff's injury.

In accordance with recognized appellate procedure, we must review the evidence in the light most favorable to the verdict.[2]

Plaintiff had worked as a section hand for the defendant for 16 years. He was part of a crew working out of Green River, Utah, where he and other members of the crew lived. On the night of January 2, 1960, the foreman, J. G. Chronopoulos, called plaintiff and two other men to report for work with him at 5 p. m. He tried but was unable to locate a fifth man. The plaintiff was not dressed as warmly as the others. He was the only one without overshoes; and whereas the others wore woolen mittens, he wore two pairs of gloves: the inner pair of canvas and the outer pair of a rubberized material. Plaintiff testified that he had worked at other times, including nights, while similarly dressed; and that he wore what he thought was sufficient clothing.

The assignment was to go in a truck to a point on the defendant's mainline about 18 miles west of Green River to repair what is called an "open joint" which had developed between the ends of rails because of their contraction due to the extremely cold weather. The procedure is to loosen eight or nine of the 40-foot rail lengths on either side of the open joint, one at a time, and move each slightly toward the open joint and thus close it. During the procedure they use what is called a "dutchman": a short piece of rail, two or three inches in length, depending upon the necessity, to insert temporarily while trains are allowed to pass over it at reduced speed

This particular job took nearly all night. The weather was bitter cold; there was snow on the ground and there was some wind. The recorded temperature at Green River was plus 10 degrees F. at 5 p. m. January 2, and minus 5 degrees at 5 a. m. the next morning. While the work was in progress, the men chopped up old ties and maintained a fire by which they warmed themselves intermittently. Their truck, which had a heater in it, was close by, its motor running at least part of the night, its lights being required to aid in the work.

2. Johnson Ready-Mix Concrete Company v. United Pacific Ins. Co., 11 Utah 2d 279, 358 P. 2d 337.

Particularly when a train would pass, the men would stay by the fire.

Plaintiff testified that he was cold; that the first indication of trouble with his hands came about midnight when he was loosening rail bolts with a large iron wrench about four feet long, he noticed his fingers seemed to be clamped to the wrench and he had to pry them loose. He said that at some time during the night he complained of being cold. He also stated that he went to the truck to get warm, but thought he was only there about 30 minutes, which in view of the verdict must be taken as true. However, in searching for fault on the part of the railroad, it is significant to observe that there is no evidence that anyone prevented or dissuaded the plaintiff from warming his hands as often or as long as he wanted to; and that the foreman and both of the other men testified that the plaintiff in fact went to the truck around midnight and remained there the rest of the night until the repair was completed about 4 a. m. At about noon the next day when plaintiff awakened from his sleep he noticed that his fingers were painful and discolored, so he thought they must have been frozen. After reporting the matter to his foreman and being examined by the doctor, he was hospitalized and treated for frostbite. It became necessary to amputate the little finger and ring finger of his left hand; the former at the first joint from the knuckle and the latter at the knuckle. An added tribulation is that the middle finger on that hand had already been amputated some 22 years before because of an infection. Thus he now has only the thumb and index finger on that hand. The evidence is that he can still perform the duties of his employment as a section hand despite his loss of his fingers.

■■ It will be conceded by all, including the defendant, that by the terms of the F.E.L.A. and the decisions of the U. S. Supreme Court [3] and this court [4] regarding its application, these principles are well established: that it imposes a high standard of care upon the railroad to safeguard its employees against injury; that the duty of care increases in proportion to the danger involved in the employment; that there must be a policy of extreme liberality in allowing the issues in such cases to be determined by a jury; and that if there is any evidence whatsoever to justify a reasonable belief that the railroad failed to exercise such precautions as reasonable care and prudence would dictate under the circumstances, the verdict must be sustained. But that is as far as the law goes. It is neither

3. See Wilkerson v. McCarthy, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497; Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916; Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493.

4. See Stickel v. Union Pacific R. R. Co., 122 Utah 477, 251 P.2d 867.

an insurance nor a compensation act. The right to recovery is based upon negligence.[5]

To justify the submission of the case to the jury and the finding of negligence, the plaintiff sets forth what he calls "the more could have been done rule", stating that "this rule was well established in the case of Bailey v. Central Vermont Railway, Inc." [6] That case does not harmonize with the interpretation the plaintiff attempts to read into it: that if anything more whatsoever could have been done for the plaintiff's safety, a jury question as to the defendant's liability for failing to do so is presented. Even a cursory reflection upon the matter reveals the fallacy therein. Practically any type of industrial accident could in some way have been prevented by the application of precautions perceivable by hindsight. If nothing else, the plaintiff could have "stood in bed."

The Bailey case does emphasize the principles we have stated above. But it does not depart from the universal constant in the law of torts: that liability is predicated upon negligence: the failure to use reasonable care under the circumstances. That being so, the statement that liability results when "more could have been done" for the safety of the employee, must be understood as meaning "within the demands of reasonable care." This is the only way that such an idea can be reconciled with the commonly acknowledged rule as to what constitutes negligence.

Plaintiff also urges application to our case of certain language from Rogers v. Missouri Pacific Railroad: [7]

"* * * The test of a jury case is simply whether the proofs justify with reason the conclusion that the *employer negligence played any part, even the slightest*, in producing the injury * * *." (Emphasis added.)

We do not understand the emphasized phrase, upon which plaintiff places great reliance in support of his position, as referring to the question whether negligence did or did not exist. It will be noted that the statement proceeds upon the assumption that there is negligence and refers to the quantum thereof. It says in effect that if there is negligence, which played any part in causing the plaintiff's injury, even the slightest, the defendant is responsible for whatever proportion of the damages it caused. But it does not suggest any the less necessity for finding negligence, nor that "even the slightest" fault might be found to be negligence.

■ With all sympathy for the plaintiff's misfortune, and every indulgence toward his claims, we are nevertheless unable to perceive any basis upon which the defendant can be held in violation of its duty to exer-

5. See cases in footnotes 3 and 4 above.
6. 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444.
7. 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493.

cise reasonable care for his safety. Neither party can be blamed for the cold weather. Both were fully aware of it. However extensive the railroad's duty to its employees for their safety has become, it has never extended to the supervision of the attire of its section hands. This might involve niceties unwelcome to both parties. The plaintiff himself was in the best position to know about the sufficiency of his clothing. The foreman with justification observed that he thought a man who had worked on that job for many years ought to know how to dress himself for his work. It is to the credit of the plaintiff's candor and honesty that he agreed with this in substance and said that he thought he was dressed all right; that he and the crew had worked under similar conditions on many occasions; and that neither he nor any crew member complained about it. He made similar candid admissions about being kept in the cold, admitting that he had access to the fire and to the truck to warm himself at any time he wanted to. The evidence is that at only one time during the job did he mention being cold, and that this was while he and the others were warming themselves by the fire. It is so obvious as to hardly justify comment that plaintiff alone could know how cold he was; that he could best judge what to do about it and communicate the fact to others. What further the railroad could have done within the limits of reasonable care for the plaintiff's safety is not easy to conjure up. But his counsel must be given credit for enterprising efforts in that regard.

They claim reasonable care required these measures: (1) that the defendant should have put more men on the job, which would have shortened the time for the repair and plaintiff's exposure to the cold; and (2) that the "dutchman" (short section of rail) could have been placed in the break and left until morning when the repair could have been done more quickly in daylight and when it was not quite so cold. Insofar as the record reveals, these claims are fashioned of nothing more substantial than conjecture and there is no reasonable basis to hold the railroad negligent on either count.

It must be appreciated that the railroad is in a business which literally moves on and must be kept moving. What can and should be done must be measured against its duty to maintain its road in the safest possible condition for its employees and the passengers and merchandise it transports. In the face of difficulties such as here arose it must resort to the best expedient available to meet these responsibilities and to keep its trains running on schedule. To fulfill these obligations the railroad called and relied on its section crew. Other than the reference to its attempt to try to get the one more crew member who couldn't be located, there is no evidence that more men or crews were available. Nor is it shown that additional men would have shortened

the time required for the repair. The foreman testified that these rails must be loosened and moved one at a time so that more men could not have gotten at the work.

In regard to the contention that the defendant could have placed the "dutchman" in the track for the night and fix it in the morning, this undisputed testimony is pertinent: that it cannot be made sufficiently secure to rely on for trains at regular speeds; that there is danger of its breaking loose or turning sidewise, the consequences of which need not be detailed. For this reason trains must be slowed to not exceeding 20 miles per hour when it is in use. If this condition lasts very long, schedules are disrupted and trains are stalled. Thus it is plain that this device is only a temporary expedient to be used until the regular repair can be effected. To hold the defendant negligent not to have left it in all night would require an action that according to the evidence would almost certainly have been considered negligence if any mishap had occurred as a result of leaving it in for any longer than was absolutely necessary.

Notwithstanding the broad prerogatives of the jury in this case in determining the standard of reasonable care, where it appears that the railroad acted in good faith and exercised its judgment as to the proper course to follow; and there is no evidence of failure to use reasonable care in doing so, the jury cannot be allowed to second guess the judgment of management and impose liability upon the railroad simply because a mishap such as the one of concern here occurred.

The writer believes it is unfortunate that there is not a compensation act so that this plaintiff and others similarly situated could be compensated for injuries suffered in performing the duties of employment without all of the tribulations and the risks involved in contentious litigation to determine where fault lay, often as here, without success. But that is the responsibility of Congress.

From the evidence here it seems quite inescapable that it was the plaintiff's own conduct with respect to his clothing and/or in caring for his own person in the cold, that resulted in this regrettable injury. For this reason the judgment must be vacated. It is so ordered. Costs to defendant (appellant).

WADE, C. J., and HENRIOD, McDONOUGH and CALLISTER, JJ., concur.